UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ALICIA HOPPER,                                  :
                                                :
                        Plaintiff,              :
                                                :    **07-CIV-8526 (WHP)(THK)**
            -   against -                        :
                                                :
BANANA REPUBLIC, LLC,                           :
BANANA REPUBLIC, INC., and                      :
THE GAP, INC.,                                  :
                                                :
                        Defendants.             :
------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S
### COMPLAINT, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendants Banana Republic, LLC, Banana Republic, Inc., and The Gap, Inc.

(collectively, "The Gap"), by and through their attorneys, Seyfarth Shaw LLP, respectfully

submit this memorandum of law in support of their motion to dismiss the claims asserted by

Plaintiff Alicia Hopper ("Plaintiff" or "Hopper") in her Complaint,[1] pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, or in the alternative for summary judgment.

## PRELIMINARY STATEMENT

This action is the baseless attempt of an independent contractor to assume the rights of an

employee. Stated simply, Hopper was never an employee of The Gap. Rather, she worked as an

independent contractor under the auspices of RGIS, LLC ("RGIS"), a third-party company that

supplied inventory services to The Gap. The Agreement between RGIS and The Gap clearly

---

[1] For the Court's convenience, a copy of the Complaint is attached as Exhibit A. References to
the Complaint appear as "(Compl. ¶ __)"

establishes that Hopper was an independent contractor. Thus, Hopper is not entitled to pursue a discrimination claim against The Gap under the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.*, (the "NYSHRL") or § 8-107 of the New York City Administrative Code (the "NYCHRL").

Moreover, even if Hopper was an employee of The Gap, her attempt to bring a claim based on an alleged hostile work environment still fails. Hopper claims she was subjected to only one isolated incident of touching. Even accepted as true, this alleged incident is not severe or pervasive enough to rise to the level of actionable harassment.

Hopper's attempt to assert claims against The Gap sounding in negligence are similarly without merit. These claims, for negligent hiring and retention and negligent infliction of emotional distress, are inadequately alleged and therefore warrant dismissal.

## STATEMENT OF FACTS[2]

In or about July 2007, Hopper was on the premises of the Banana Republic store located at 2360 Broadway, New York, New York (the "Store"), performing inventory services in her capacity as an independent auditor. (Compl. ¶ 28) Hopper alleges that Kristian Portella ("Portella"), an employee of Banana Republic, "sexually harassed" her when he allegedly "rubbed his groin and body against [her] buttocks and entire body while claiming to be putting t-shirts on a shelf located above [her]" and that she "felt something poking [her] in her behind and turned to see Portella behind her with an erection through his pants." (Compl. ¶¶ 28 – 29 & 34) Hopper further alleges that she "complained to Portella as well as [The Gap's] employee 'Miss

---

[2] The Gap accepts the facts alleged in the Complaint as true solely for purposes of this motion.

Mary'" about Portella's behavior (Compl. ¶ 31), and that she also "reported the incident to [The Gap's] supervisors, Walter Woodson and Nate Hammond." (Compl. ¶ 35)  Hopper makes no allegations as to the conduct of any other employee of The Gap other than this single isolated incident.

Hopper was assigned to the Store pursuant to a contract between The Gap and RGIS. The Agreement states that the "parties intend that an independent contractor relationship shall be created."  It provides that "[t]he control of the work will be under the sole control of RGIS" (Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs. Stmt.") ¶ 1), that employees of RGIS, such as Hopper, are paid by RGIS and not The Gap (Defs. Stmt. ¶ 2), and that no Federal, State or local taxes are withheld from the payments that The Gap makes to RGIS.  (*Id.*)

In addition, the Agreement specifically articulates that "[a]ll expenses incidental to the performance of the services, including, but not limited to, employee wages and training, shall be borne by RGIS."  (*Id.* ¶ 3)  It further states that "neither RGIS, nor its employees are entitled to any of the benefits that [The Gap] provides its employees.  It is understood that [The Gap] will not provide and shall not be responsible for workers' compensation insurance for RGIS or any of its employees."  (*Id.* ¶ 4)

## ARGUMENT

## I.   MOTION TO DISMISS STANDARD

A complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. Proc. 12(b)(6), where the plaintiff has not alleged "enough facts

3

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct.

1955, 1974 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (*Twombly*

"obliges a pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible"). Allegations of fact "must be enough to

raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. A complaint is

therefore properly dismissed where the plaintiff fails "to provide the 'grounds' of his

'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (quoting *Papasan v.

Allain*, 478 U.S. 265, 286 (1986)).

To the extent this Court considers the RGIS Agreement, a document outside the

Complaint, it may treat this motion as a motion for summary judgment. Fed. R. Civ. P. 12(b)(6).

That document, the contents and authenticity of which cannot be disputed, confirms the

allegation in the Complaint that Hopper was "an independent auditor." (Compl. ¶ 28)

## II.    HOPPER'S SECOND AND FOURTH
CAUSES OF ACTION SHOULD BE DISMISSED

Hopper's Second and Fourth Causes of Action are for discrimination under § 296(1) of

the NYSHRL and § 8-107(1) of the NYCHRL, respectively. (Compl. ¶¶ 55-58 & 62-65) These

claims fail because Hopper was not an employee of The Gap, as required to state a claim under

those statutes, and because her Complaint, even accepted as true, fails to establish a hostile work

environment as a matter of law.

4

## A.    **HOPPER WAS NOT AN EMPLOYEE OF THE GAP**

An employee-employer relationship is required to sustain claims under the NYSHRL and the NYCHRL. *See Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578 (NRB), 2006 U.S. Dist. LEXIS 23399, at *12 (S.D.N.Y. Apr. 21, 2006) (Tab B)[3] (employer-employee relationship required to sustain claim under NYSHRL and NYCHRL) (citing *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)); *O'Neill v. Atlantic Sec. Guards, Inc.*, 250 A.D.2d 493, 671 N.Y.S.2d 976 (1st Dep't 1998) (holding that plaintiff did not have a valid NYCHRL claim because he was an independent contractor acting through a corporation, and not an employee); *Lavergne v. Burden*, 244 A.D.2d 203, 665 N.Y.S.2d 272, 273 (1st Dep't 1997) (action dismissed where plaintiff was an independent contractor, not an employee, and because she did not "carry out work in furtherance of an employer's business enterprise").

Hopper states that she was working at the Store as an "independent auditor." (Compl. ¶ 28) The terms of the Agreement confirm this. For example, it provides that an "*independent contractor relationship* shall be created" and "[t]he control of the work will be under the sole control of RGIS." (Defs. Stmt. ¶ 2) (emphasis added). Additionally, the Agreement makes clear that The Gap never paid Hopper a salary (*id.*), and there were no Federal, State or local taxes withheld from the payments that The Gap made to RGIS (*id.*). The Agreement also provides that "neither RGIS, nor its employees are entitled to any of the benefits that [The Gap] provides its employees" and "[i]t is understood that [The Gap] will not provide and shall not be responsible for workers' compensation insurance for RGIS or any of its employees." (*Id.* ¶ 5)

---

[3] Copies of unreported cases are annexed hereto at Tabs B and C.

In *Scott v. Massachusetts Mut. Life Ins. Co.*, 86 N.Y.2d 429, 633 N.Y.S.2d 754 (1995), the plaintiff was an insurance agent who brought a discrimination claim under the NYSHRL against an insurance company for terminating her agency contract. The New York Court of Appeals held that an employment relationship did not exist because, among other things, (1) plaintiff was "paid by performance rather than a salary," (2) there were no "Federal, State or local taxes withheld from her pay," and (3) the plaintiff "agreed by contract to operate as an independent contractor." 86 N.Y.2d at 433-34, 633 N.Y.S.2d at 756. As set forth above, the terms of Hopper's assignment to the Store, pursuant to The Gap's agreement with RGIS, are similar.

Hopper may argue that she falls within the protections of the NYCHRL because she is a "natural person" who "carr[ied] out work in furtherance of an employer's business enterprise" within the meaning of § 8-102(5). The argument would be unavailing. As an employee of RGIS, Hopper was carrying out work in furtherance of RGIS's business enterprise, not that of The Gap. Her claims under the NYCHRL are therefore without merit. *See Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189 (E.D.N.Y. 2007); *Lavergne*, 244 A.D.2d at 203, 655 N.Y.S.2d at 273.

### B.    HOPPER DOES NOT ALLEGE A HOSTILE WORK ENVIRONMENT AS A MATTER OF LAW

Even assuming Hopper was a Gap employee, or would otherwise be permitted to pursue a claim under the NYSHRL or NYCHRL, she does not allege a hostile work environment as a matter of law. Hopper's allegations that Portella "sexually harassed" her when he allegedly "rubbed his groin and body against [her] buttocks and entire body" and that she "felt something poking [her] in her behind and turned to see Portella behind her with an erection through his

6

pants" (Compl. ¶¶ 28 – 29 & 34), do not come close to satisfying the "severe and pervasive"

standard necessary to state a claim for a hostile work environment claim. It is well settled that in

order to establish such a claim, Hopper must show that her workplace was "permeated with

'discriminatory intimidation, ridicule, and insult'" that was so "severe or pervasive" that it

altered the conditions of her employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

(citation omitted); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001); *Durant v.

NYNEX*, 101 F. Supp. 2d 227, 234 (S.D.N.Y. 2000).

The isolated incident alleged by Hopper is wholly insufficient under this standard. As the

Second Circuit has held, "[i]solated, minor acts or occasional episodes do not warrant relief."

*Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Legnani v.

Alitalia Linee Aeree Italiane*, No. 95-CV-0202 (SAS), 1997 WL 642556, at *3 (S.D.N.Y. Oct.

16, 1997) (grabbing crotch and thrusting pelvis at plaintiff on four occasions in a three-month

period not severe and pervasive) (Tab C); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745,

747 (4th Cir. 1996) (affirming grant of summary judgment because thirteen incidents, including

supervisor kissing and touching plaintiff in an unwelcome fashion on several occasions and

suggestively saying, "Ah, alone at last," were not severe or pervasive); *cf. Fairbrother v.

Morrison*, 412 F.3d 39 (2d Cir. 2005) (daily name-calling, along with prevalent display of

pornography in the workplace and regular discussion of sexual exploits, was severe or pervasive

enough to constitute actionable harassment because of sex).

Thus, Hopper's claims of discrimination against The Gap under the NYSHRL and the

NYCHRL should be dismissed.

## III.  HOPPER'S THIRD AND FIFTH
## CAUSES OF ACTION SHOULD BE DISMISSED

Hopper asserts as her Third and Fifth Causes of Action that The Gap engaged in an

"unlawful discriminatory practice" in violation of § 296(6) of the NYSHRL and § 8-107(6) of

the NYCHRL, respectively, by "aiding, abetting, inciting, compelling and coercing" the alleged

discriminatory conduct of Portella.  (Compl. ¶¶ 61 & 68)  Hopper cannot establish a claim for

aiding and abetting as a matter of law because, for the reasons explained above, she cannot

establish an underlying discrimination claim against The Gap.  *See Forrest v. Jewish Guild for*

*the Blind*, 3 N.Y.3d 295, 314, 786 N.Y.S.2d 382, 397 (2004) (holding that there must be a viable

underlying discrimination claim to support aider and abettor liability under either the NYSHRL

or NYCHRL); *Priore v. N.Y. Yankees*, 307 A.D.2d 67, 74 n.2, 761 N.Y.S.2d 608, 614 n.2 (1st

Dep't 2003) (same).

## IV.  HOPPER'S SIXTH CAUSE OF ACTION SHOULD BE DISMISSED

Hopper claims as her Sixth Cause of Action that The Gap is liable under the NYCHRL

for the alleged discriminatory conduct of Portella.  (Compl. ¶¶ 69-71)  An employer is liable

under the NYCHRL for the unlawful discriminatory practice of non-supervisory employees only

where the employer "knew of the employee's or agent's discriminatory conduct, and acquiesced

in such conduct or failed to take immediate and appropriate corrective action, " N.Y.C. Admin.

Code § 8-107(13)(b)(2), or "should have known of the employee's or agent's discriminatory

conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct," *id.* §

8-107(13)(b)(3).

Hopper has not alleged that The Gap acquiesced in or otherwise failed to take immediate corrective action against Portella. Rather, Hopper claims only that she "complained to ... [The Gap's] employee 'Miss Mary'" about Portella's behavior (Compl. ¶ 31), and that she also "reported the incident to [The Gap's] supervisors, Walter Woodson and Nate Hammond. (Compl. ¶ 35) Nowhere does she claim that The Gap failed to investigate or otherwise respond appropriately to her complaint. Indeed, Hopper fails even to allege that The Gap knew or should have known of any alleged discriminatory conduct by Portella or failed to prevent such conduct. Thus, her Sixth Cause of Action warrants dismissal. *See Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275 (S.D.N.Y. 2006).

## V.    HOPPER'S SEVENTH CAUSE OF ACTION SHOULD BE DISMISSED

Hopper alleges negligent infliction of emotional distress as her Seventh Cause of Action. (Compl. ¶¶ 72-74) She has failed to allege an essential element of that claim, *i.e.,* that The Gap's conduct unreasonably endangered her physical safety. *See Hart v. Child's Nursing Home Co.*, 298 A.D.2d 721, 723, 749 N.Y.S.2d 297, 299 (3d Dep't 2002) ("[I]t is well settled that [a] claim for negligent infliction of emotional distress requires a showing that defendants' conduct unreasonably endangered plaintiffs' physical safety.") (internal quotations omitted); *see also Guiles v. Simser,* 9 Misc. 3d 1083, 1084, 804 N.Y.S.2d 904, 905 (Sup. Ct. 2005) ("The elements necessary to recover damages for the negligent infliction of emotional distress include a showing of bodily harm or an endangerment of the plaintiff's physical safety.") (citations omitted), *aff'd,* 35 A.D.3d 1054 (3d Dep't 2006). While the Complaint alleges, in conclusory fashion, that Portella's actions "endangered plaintiff's safety or caused her to fear for her own safety"

(Compl. ¶ 73), such a "formulaic recitation" of the elements of the cause of action is insufficient. *Twombly*, 127 S. Ct. at 1965.

## VI.    HOPPER'S FIRST CAUSE OF ACTION SHOULD BE DISMISSED

Hopper asserts a claim for negligent hiring and retention as her First Cause of Action. (Compl. ¶¶ 48-54)  In order to establish a valid claim for negligent hiring and retention, Hopper must allege, *inter alia*, a physical injury caused by Portella's behavior.  *Kirkman by Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 611 N.Y.S.2d 615 (2d Dep't 1994).  Claims for negligent hiring and retention made against employers usually involve plaintiffs who have suffered *significant physical injury* as a result of the employer's behavior.  *See Perry v. Burger King Corp.*, 924 F. Supp 548, 553 (S.D.N.Y. 1996) (dismissing cause of action for negligent hiring where significant physical injury was not alleged); *Detone v. Bullit Courier Serv., Inc.*, 140 A.D.2d 278, 279, 528 N.Y.S.2d 575, 576 (1st Dep't 1988) (claim against company for negligently hiring and retaining employee who struck and permanently injured plaintiff during altercation); *Mon v. New York*, 78 N.Y.2d 309, 574 N.Y.S.2d 529 (1991) (claim for personal injuries sustained by plaintiffs when they were shot by probationary officer); *De Leon v. Hospital of Albert Einstein Coll. of Med.*, 164 A.D.2d 743, 566 N.Y.S.2d 213 (1st Dep't 1991) (plaintiff injured during birth by incompetent nurse); *Haddock v. New York*, 75 N.Y.2d 478, 554 N.Y.S.2d 439 (1990) (nine year old child raped by Parks Department employee); *Aubry v. General Accident Ins.*, 152 A.D.2d 973, 544 N.Y.S.2d 765 (4th Dep't 1989) (claimant died as a result of seeing his son become ill from inhaling poisonous fumes created by incompetent welder).

10

Hopper does not allege a significant physical injury rising to the level required for a valid claim for negligent hiring or retention. Again, Hopper relies on a boiler-plate description of her "physical injuries," as follows:

> plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great physical and mental pain, and she was rendered sick, sore, lame and disabled and so remains, and she was incapacitated for her usual occupation and will, upon information and belief, be so incapacitated in the future.

(Compl. ¶ 51) This mechanical recitation of the elements of the cause of action, without any connection to Hopper or her specific circumstances, is insufficient. *See Twombly,* 127 S. Ct. at 1964-65.

In addition, a necessary element of a valid cause of action for negligent hiring and retention "is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Estevez-Yalcin v. Children's Vill.*, 331 F. Supp. 2d 170, 174 (S.D.N.Y. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese*, 229 A.D.2d 159, 160, 654 N.Y.S.2d 791, 793 (2d Dep't 1991); *Brown v. Bronx Cross County Med. Group*, 834 F. Supp. 105, 110 (S.D.N.Y. 1993) ("[P]laintiff must show assault or professional incompetence on the part of the negligently hired and retained employee resulting in personal injury to the plaintiff").

Once again, other than a word-for-word description of the elements of a claim for negligent hiring and retention (Compl. ¶¶ 48-54), Hopper has not amplified her claim with factual allegations needed to state a valid claim. *See Iqbal*, 490 F.3d at 157-57. Nor does Hopper allege that The Gap failed to investigate Portella notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate him. *See Sheila C. v. Povich,* 2 Misc. 3d 315, 324, 768 N.Y.S.2d 571, 580 (Sup. Ct. 2003); *Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d

11

505, 519 (S.D.N.Y. 2004) (liability for negligent hiring exists only where the employer hired the employee with knowledge of the propensity that caused the injured party's harm) (citing *Borden v. Capital Dist. Transp. Auth.*, 307 A.D.2d 1059, 1061, 763 N.Y.S.2d 860, 862 (3d Dep't 2003). Consequently, Hopper's First Cause of Action for negligent hiring and retention must be dismissed.

## CONCLUSION

For the foregoing reasons, The Gap respectfully requests that this Court dismiss the Complaint with prejudice in its entirety and grant such other relief as may be just and proper.

Dated: November 30, 2007
      New York, New York

                                                                   Respectfully submitted,

                                                                   SEYFARTH SHAW LLP

                                                                   By:

                                                               Robert S. Whitman (RW-1140)
                                                               Jeremi L. Chylinski (JC-3196)
                                                      620 Eighth Avenue
                                                       New York, New York 10018-1405
                                                      (212) 218-5500 / Fax (212) 218-5526

                                                               Attorneys for Defendants

12

A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------X

ALICIA HOPPER,                                                    Index #: 300053/07

        Plaintiff,                                               **COMPLAINT**

        v.                                                    Plaintiff Demands a Jury

BANANA REPUBLIC, LLC,
BANANA REPUBLIC, INC.,
And THE GAP, INC.,

        Defendants,
--------------------------------------------------X

Plaintiff ALICIA HOPPER, by attorneys, AKIN & SMITH, LLC, upon information and belief,

complains of defendants as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the laws of the State of New York and the Administrative

    Code of the City of New York, seeking damages to redress the injuries Plaintiff has suffered

    as a result of being harassed, assaulted and battered by Defendant's employee.

### <u>PARTIES</u>

2. Plaintiff is a resident of the State of New York.

3. That at all times relevant, defendant BANANA REPUBLIC, LLC,., was and still is a

    domestic corporation duly organized and existing under and by virtue of the laws of the State

    of New York.

4.  That at all times relevant, defendant BANANA REPUBLIC, LLC,, was and still is a foreign corporation that does business in the state of New York.

5.  That at all times relevant, defendant BANANA REPUBLIC, INC., was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

6.  That at all times relevant, defendant BANANA REPUBLIC, INC., was and still is a foreign corporation that does business in the state of New York.

7.  That at all times relevant, defendant THE GAP, INC., was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.  That at all times relevant, defendant THE GAP, INC., was and still is a foreign corporation that does business in the state of New York.

9.  That at all times relevant mentioned, Defendant BANANA REPUBLIC, LLC owned the premises located at 2360 Broadway New York, NY 10024

10. That at all times relevant mentioned, Defendant BANANA REPUBLIC, LLC operated a clothing store at 2360 Broadway New York, NY 10024

11. That at all times relevant mentioned, Defendant BANANA REPUBLIC, LLC maintained the above store located at 2360 Broadway New York, NY 10024

12. That at all times relevant mentioned, Defendant BANANA REPUBLIC, LLC controlled the above store located at 2360 Broadway New York, NY 10024

13. That at all times relevant mentioned, Defendant BANANA REPUBLIC, INC. owned the premises located at 2360 Broadway New York, NY 10024

14. That at all times relevant mentioned, Defendant BANANA REPUBLIC, INC. operated a clothing store at 2360 Broadway New York, NY 10024

15. That at all times relevant mentioned, Defendant BANANA REPUBLIC, INC. maintained the above store located at 2360 Broadway New York, NY 10024

16. That at all times relevant mentioned, Defendant BANANA REPUBLIC, INC. controlled the above store located at 2360 Broadway New York, NY 10024.

17. That at all times relevant mentioned, Defendant THE GAP, INC. owned the premises located at 2360 Broadway New York, NY 10024

18. That at all times relevant mentioned, Defendant THE GAP, INC. operated a clothing store at 2360 Broadway New York, NY 10024

19. That at all times relevant mentioned, Defendant THE GAP, INC. maintained the above store located at 2360 Broadway New York, NY 10024

20. That at all times relevant mentioned, Defendant THE GAP, INC. controlled the above store located at 2360 Broadway New York, NY 10024

21. That at all the times hereinafter mentioned, the defendants employed personnel in the course of its business at the premises located at 2360 Broadway New York, NY 10024.

22. That at all times relevant mentioned, KRISTIAN PORTELLA (Hereinafter also referred to as "PORTELLA") was at all times material an agent, servant and/or employee of Defendant BANANA REPUBLIC, INC.

23. That at all times relevant mentioned, KRISTIAN PORTELLA was at all times material an agent, servant and/or employee of Defendant BANANA REPUBLIC, LLC.

24. That at all times relevant mentioned, KRISTIAN PORTELLA was at all times material an agent, servant and/or employee of Defendant THE GAP, INC.

25. On or about July 10, 2007, the plaintiff, ALICIA HOPPER, was at the aforementioned premises.

26. On or about July 10, 2007, the plaintiff, ALICIA HOPPER, was at the aforementioned premises in the course of her employment as an Auditor hired to audit merchandise at the above location.

27. That at all times hereinafter mentioned, the plaintiff, ALICIA HOPPER, was legally at the aforementioned premises.

28. On or about July 10, 2007, Plaintiff was sexually harassed, assaulted and battered by PORTELLA while working in the stock room of defendant BANANA REPUBLIC's retail outlet located at 2360 Broadway New York, NY 10024 as an independent auditor.

29. On or about July 10, 2007 Plaintiff was scanning t-shirts in BANANA REPUBLIC's retail outlet located at 2360 Broadway New York, NY 10024 when Defendant PORTELLA rubbed his groin and body against Plaintiff's buttocks and entire body while claiming to be putting t-shirts on a shelf located above Plaintiff.

30. Despite Plaintiff's numerous protests and complaints, PORTELLA continued to rub his groin against plaintiff's buttocks while she was working.

31. Plaintiff complained to PORTELLA as well as Defendants' employee "Miss Mary" about PORTELLA's vulgar conduct and offensive behavior.

32. Plaintiff told "Ms. Mary": "He [Portella] keeps rubbing on my ass."

33. Defendants' employee "Miss Mary" witnessed the above events with PORTELLA.

34. On another occasion, Plaintiff felt "something poking [her] in her behind" and turned to see PORTELLA behind her with an erection through his pants.

35. After this last occasion, Plaintiff began to cry hysterically and immediately reported the incident to Defendants' supervisors, Walter Woodson and Nate Hammond.

36. Defendant's actions and conduct were intentional and intended to harm the Plaintiff.

37. As a result of defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

38. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, suffering, distress, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

39. That the defendants, their agent(s), servant(s) and employee(s), acting as such on behalf of defendants and within the scope of their employment, intentionally, willfully assaulted and battered the plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did a sexual act which threatened such contact to the plaintiff, and that act(s) caused apprehension of such contact in the plaintiff, and defendants, in a an offensive manner touched, without her consent and with the intention of causing harmful and/or offensive bodily contact to the plaintiff and caused such batter in and about her back, body and buttocks.

40. That the defendants were careless and reckless in hiring and retaining as and for its employee, agent and/or servant the defendant PORTELLA; in that the said employee PORTELLA lacked the experience, deportment and ability to be employed by the defendants; in that the defendants failed to exercise due care and caution in their hiring practices, and in particular, in hiring the employee PORTELLA, who lacked the mental capacity and the ability to function as an employee of the aforementioned defendant; in that aforesaid defendants failed to investigate the background of PORTELLA, in that they hired and retained as employee of their business establishment said individual who lacked the maturity, sensibility and intelligence to be employed by the defendants in that the defendants knew of the lack of ability, experience, deportment and maturity of said defendant employee

when they hired him to be employed; and, in that the defendants, their agents, servants and employees were otherwise careless, negligent and reckless.

41. That the aforesaid occurrence, to wit: sexual harassment, assault and battery and the resulting injuries to mind and body therefrom, were caused wholly and solely by reason of the fault and negligence of the defendants, their agents, servants and employees without any negligence on the part of the plaintiff.

42. Defendants engaged in extreme and outrageous conduct.

43. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiffs.

44. There exists a causal connection between the above conduct and said injury.

45. As a result of said conduct Plaintiffs suffered and suffers from severe emotional distress.

46. That by reason of the aforesaid, the plaintiff was subjected to mental and psychological trauma, great indignities, humiliation and ridicule.

47. That by reason of the aforesaid, the plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and she was rendered sick, and so remains, and she has expended and incurred divers sums of money in an effort to cure herself of said injuries to extricate herself from the indignities and humiliation foisted upon her by the actions of the defendants, their agents, servants and employees, including counsel fees and disbursements, and; upon information and belief, will expend further sums in that direction, and the plaintiff has been otherwise damaged.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR NEGLIGENCE UNDER STATE LAW

48. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint.

49. That the defendants, were careless and reckless in hiring and retaining as and for its employee, the above named individual; in that the said defendants lacked the experience, deportment and ability to be employed by the defendants; in that the defendants failed to exercise due care and caution in their hiring practices, and in particular, in hiring the defendant employee, PORTELLA, who lacked the mental capacity and the ability to function as an employee of the aforementioned defendants; in that aforesaid defendants failed to investigate the above named defendant's background and in that they hired and retained as employee of their business establishment in that the defendant lacked the maturity, sensibility and intelligence to be employed by the defendants; in that the defendants knew of the lack of ability, experience, deportment and maturity of said defendant employee when they hired him to be employed; and, in that the defendants, their agents, servants and employees were otherwise careless, negligent and reckless.

50. That the aforesaid occurrence, to wit: assault and battery and the resulting injuries to mind and body therefrom, were caused wholly and solely by reason of the negligence of the defendants, their agents, servants and employees without any negligence on the part of the plaintiff.

51. That by reason of the aforesaid, the plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great physical and mental pain, and she was rendered sick, sore, lame and disabled and so remains, and she was incapacitated from her usual occupation and will, upon information and belief, be so incapacitated in the future,

and she has expended and incurred divers sums of money in an effort to cure herself of said

injuries to extricate herself from the indignities and humiliation foisted upon him by the

actions of the defendants, their agents, servants and employees, including counsel fees and

disbursements, and; upon information and belief, will expend further sums in that direction,

and the plaintiff has been otherwise damaged.

52. As a direct and proximate result of Defendants' negligence, Plaintiff has been and will

continue to suffer from severe emotional distress, pain, suffering and inconvenience.

53. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered a loss of

enjoyment of life

54. WHEREFORE, Plaintiff demands judgment against Defendants in an amount that exceeds

the jurisdictional requirements of this Court, plus interest and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

56. Executive Law § 296 provides that  "1. It shall be an unlawful discriminatory practice: "(a)

For an employer or licensing agency, because of the age, race, creed, color, national origin,

sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or

to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment."

57. Defendants engaged in an unlawful discriminatory practice by discriminating against the

Plaintiff because of her gender.

58. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts

forbidden under this article, or attempt to do so."

61. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY
## ADMINISTRATIVE CODE

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or

employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

64. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's gender, national origin and citizenship.

65. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY
## ADMINISTRATIVE CODE

66. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice:

"For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

68. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY
## ADMINISTRATIVE CODE

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

70. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent

or independent contractor. Provides

    a. An employer shall be liable for an unlawful discriminatory practice based upon the
conduct of an employee or agent which is in violation of any provision of this section
other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the
conduct of an employee or agent which is in violation of subdivision one or two of this
section only where:

    (1) the employee or agent exercised managerial or supervisory responsibility; or
(2) the employer knew of the employee's or agent's discriminatory conduct, and
acquiesced in such conduct or failed to take immediate and appropriate corrective action;
an employer shall be deemed to have knowledge of an employee's or agent's
discriminatory conduct where that conduct was known by another employee or agent who
exercised managerial or supervisory responsibility; or

    (3) the employer should have known of the employee's or agent's discriminatory conduct
and failed to exercise reasonable diligence to prevent such discriminatory conduct.

71. Defendants violated the above section as set forth herein.


## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

72. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

73. Defendant breached a duty owed directly to the plaintiff that either endangered plaintiff's

physical safety or caused plaintiff to fear for her own safety.

74. As a result of said conduct Plaintiff suffered and suffers from severe emotional distress. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## INJURY AND DAMAGES

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in a amount in excess of the jurisdiction of all lower courts;

B. As Defendants' conduct has been willful, outrageous, malicious, Plaintiff also demands punitive damages against Defendants;

C. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

D. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices and negligence.

Dated:  New York, NY
        August 17, 2007

                                    **AKIN & SMITH, LLC**

                        By:

                                    Derek T. Smith (DTS/1747)
                                    Attorneys for Plaintiff
                                    305 Broadway  Suite 1101
                                    New York, NY 10007
                                    (212) 587-0760

B

LEXSEE 2006 US DIST LEXIS 23399

**PATRIC KILKENNY, Plaintiff, - against - GREENBERG TRAURIG, LLP AND MORGAN STANLEY, INC., YVONNE TRIMARCHI AND KAREN MORITA, Defendants.**

**05 Civ. 6578 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 23399*

**April 21, 2006, Decided
April 26, 2006, Filed**

**COUNSEL:** [*1] Patric Kilkenny, Plaintiff, Pro se, Armonk, NY.

For Defendant Morgan Stanley: J. Michael Riordan, Esq., Bressler, Amery & Ross, PC, New York, NY.

For Defendants Greenberg Traurig, Yvonne Trimarchi, and Karen Morita: Martin I. Kaminsky, Justin Y.K. Chu, Pollack & Kaminsky, New York, NY.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

**MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

Plaintiff Patric Kilkenny ("plaintiff" or "Kilkenny"), a 54-year-old male, brings this pro se action against Greenberg Traurig, LLP ("Greenberg Traurig"), Yvonne Trimarchi ("Trimarchi"), Karen Morita ("Morita") (collectively, "the Greenberg Traurig defendants"), and Morgan Stanley DW, Inc. ("Morgan Stanley") (collectively, "defendants") for age and gender discrimination, among other claims. Morgan Stanley now moves to dismiss the action and for sanctions pursuant to *Fed. R. Civ. P. 11.* In addition, plaintiff has moved

against Greenberg Traurig to strike certain affirmative defenses asserted in its answer. For the reasons set forth below, Morgan Stanley's motion to dismiss [*2] is granted, its motion for sanctions is denied, and plaintiff's motion to strike is denied.

**BACKGROUND**

1

    1 The following facts are drawn from plaintiff's Amended Complaint and, as is appropriate when considering a motion to dismiss, are assumed herein to be true.

This action arises out of the termination of plaintiff's employment with Greenberg Traurig, a law firm with offices in New York City and other locations. Plaintiff began working as a Junior Paralegal in the Securities Litigation Department of Greenberg Traurig on or about October 25, 2004. Amended Complaint ("Am. Compl.") P23. Plaintiff alleges that during his employment, he was never told of any problems with the quality of his work and in fact was told by all those he reported to that his work was "acceptable and correct." *Id.* at PP26, 27. As stated in the Amended Complaint, plaintiff was one of the first to volunteer to work overtime whenever a need arose. *Id.* at P32. Plaintiff also asserts that he was proactive in attending various [*3] "Webinars" in order to advance in his position and was active in promoting programs on behalf of all paralegals. *Id.* at PP29, 30. Indeed, plaintiff states that he "constantly" made suggestions to Trimarchi, who served as a supervising

paralegal at Greenberg Traurig, about involving paralegals in educational activities in order to improve their performance. *Id.* at P31.

During the course of his employment, plaintiff was assigned to work almost exclusively on matters involving Morgan Stanley, which was a Greenberg Traurig client. Morgan Stanley allegedly directed plaintiff's work on many occasions and also required him to report to various Morgan Stanley employees. *Id.* at PP 13, 14. Plaintiff also asserts that whenever Morgan Stanley required plaintiff's services, it would notify Greenberg Traurig and then require him to report to Morgan Stanley's office in Purchase, New York ("Purchase office"). *Id.* at P15. Morgan Stanley also allegedly directed Greenberg Traurig to charge plaintiff's hours to Morgan Stanley's account whenever plaintiff worked at the Purchase office. *Id.* at P16.

Plaintiff alleges that he was evaluated on or about April 15, 2005 by several attorneys [*4] who supervised his work. *Id.* at P35. However, he asserts that he was not allowed to see any of the evaluations and was not given any indication that his work was unsatisfactory. *Id.* at P36. Subsequently, on May 4, 2005, approximately six months after he was hired, plaintiff was informed by Trimarchi and Morita, the Human Resources Director at Greenberg Traurig, that he was being fired. *Id.* at P37. Plaintiff alleges that although Morita told him he was being terminated due to the quality of his work, Trimarchi told him he was "just too old to handle the position." *Id.* at P29. That same day, plaintiff alleges that he requested an investigation into the possibility that he had been discriminated against based on his age. *Id.* at P40. This investigation apparently was conducted and ultimately concluded that there was no basis for plaintiff's charge of discrimination and that he was being terminated based on the quality of his work. *Id.* at PP47-49.

Plaintiff filed the Complaint on July 20, 2005. The Amended Complaint was filed shortly thereafter on August 15, 2005. The Amended Complaint contains twelve counts. Counts One, Two, Four, and Five allege that defendants [*5] violated Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.,* as amended by *42 U.S.C. § 1981* ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, *29 U.S.C. § 621 et seq.* ("ADEA"); the New York State Human Rights Law, Executive Law *§ 296, et seq.* ("NYHRL"); and the New York City Human Rights Law, Administrative Code

of the City of New York, *Section 8-101, et seq.* ("CHRL"), respectively, when defendants discriminated against plaintiff based on his age and gender. Count Three is asserted against defendants Trimarchi and Morita and alleges that Trimarchi subjected plaintiff to humiliation in front of other employees and also slandered him by circulating false information about him. Morita allegedly participated in these activities through emails and discussions with Trimarchi. Count Six alleges that defendants Greenberg Traurig and Morgan Stanley conspired to violate plaintiff's rights by terminating him because of his age. Count Seven alleges that plaintiff was terminated at the time he would become eligible to participate in certain retirement benefits, in [*6] violation of the Employee Retirement Income Security Act ("ERISA"). Count Eight alleges that defendants Greenberg Traurig and Morgan Stanley violated New York State General Obligations Law and common law when they discriminated against him. Count Nine alleges that defendants violated their duty to exercise reasonable care in the supervision of employees. Count Ten alleges that defendants Trimarchi and Morita aided and abetted discriminatory acts in violation of the NYHRL. Count Eleven asserts that defendants violated the Equal Pay Act by paying similarly situated females a different amount than what plaintiff was paid. Count Twelve alleges that defendants Trimarchi and Morita gave false and derogatory information to employment agencies who had contacted them regarding plaintiff's work performance.

On August 25, 2005, defendant Morgan Stanley sent a letter to plaintiff, which was joined by Greenberg Traurig, demanding pursuant to *Fed. R. Civ. P. 11,* that he dismiss the Amended Complaint. Defendant Morgan Stanley then filed its motion to dismiss and for sanctions on October 12, 2005. [2] Defendants Greenberg Traurig, Trimarchi, and Morita filed [*7] an answer on October 21, 2005, in which they asserted several affirmative defenses. In relevant part, the Greenberg Traurig defendants asserted that: (i) the Amended Complaint fails to state a cause of action (First Affirmative Defense); (ii) there is no subject matter jurisdiction over defendants Trimarchi and Morita because of plaintiff's failure to exhaust his administrative remedies as to these defendants (Second Affirmative Defense); and (iii) plaintiff's claims are barred due to his own improper conduct (Fifth Affirmative Defense). On November 1, 2005, plaintiff filed a "Response to Strike Greenberg Traurig's Certain Affirmative Defenses," which this Court construed as a motion to strike certain affirmative

defenses. For the reasons discussed herein, defendant Morgan Stanley's motion to dismiss is granted, its motion for sanctions is denied, and plaintiff's motion to strike is denied.

> 2  Though plaintiff has objected to the timeliness of this motion, defendant Morgan Stanley served its motion on plaintiff on September 28, 2005, in accordance with this Court's instruction.

[*8] *DISCUSSION*

**I. Morgan Stanley's Motion**

We first consider defendant Morgan Stanley's motion to dismiss all counts asserted against it. [3] In considering a motion to dismiss, the Court must accept as true all material factual allegations in the complaint. *Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001).* However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)* (quoting *Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)*). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).*

> 3  Construing plaintiff's Amended Complaint liberally, for purposes of this discussion we need only address Counts One, Two, Four, Five, Six, and Eight, as the others are not alleged against Morgan Stanley.

> Despite plaintiff's failure to address defendant Morgan Stanley's motion to dismiss with regard to Count Eight, and hence his apparent abandonment of this Count, *see Martinez v. Sanders, 2004 U.S. Dist. LEXIS 10060, No. 02 Civ. 5624 (RCC), 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004),* we nonetheless consider it below.

[*9] **A. Counts One and Two**

"Exhaustion of administrative remedies through the EEOC is an 'essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)* (quoting *Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)*). That is, "under both Title VII and the ADEA, a claimant may bring suit in federal court only if [he] has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Id.* (citations omitted). In addition, the current defendant must have been named as a defendant in the EEOC complaint. *See Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991)* ("A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant."); *Manos v. Geissler, 377 F. Supp. 2d 422, 426 (S.D.N.Y. 2005)* ("Generally, a plaintiff's Title VII claims against a defendant who is not named as a respondent in an EEOC charge or the right-to-sue letter in connection with the [*10] complaint will be dismissed from a Title VII action."); *see also Gagliardi v. Universal Outdoor Holdings, Inc., 137 F.Supp.2d 374, 379 (S.D.N.Y. 2001)* ("Generally, in a case brought pursuant to the ADEA, a district court lacks subject matter jurisdiction over parties not named in an EEOC charge.").

Courts have recognized an exception to this requirement in cases "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson, 931 F.2d at 209; see Jackson v. N.Y. City Transit, 2005 U.S. Dist. LEXIS 25111, No. 05 Civ. 1763 (FBLB), 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005)* (applying exception to ADEA claim). Specifically, the Second Circuit has held that in order to determine whether an "identity of interest" exists, four factors must be considered:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance [*11] it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed

party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id. at 209-10.* Applying these factors to this case, we conclude that plaintiff's Title VII and ADEA claims against Morgan Stanley should be dismissed.

Here, plaintiff's allegations make clear that he could have ascertained the role that he considered Morgan Stanley to have played in the alleged misconduct and could have named it in his EEOC complaint. In addition, Morgan Stanley and Greenberg Traurig's interests are not so similar that it would be unnecessary to include Morgan Stanley in the EEOC proceedings. Significantly, Morgan Stanley is a completely distinct business entity, and any EEOC decision regarding Greenberg Traurig would have no effect on Morgan Stanley. *See Gonzalez v. Bratton, 2000 U.S. Dist. LEXIS 12002, No. 96 Civ. 6330 (VM), 2000 WL 1191558, at *27 (S.D.N.Y. Aug. 22, 2000).* Though Morgan Stanley was not prejudiced [*12] in light of the EEOC's dismissal of plaintiff's charge, plaintiff also fails under the fourth factor, given that there is no evidence that Morgan Stanley ever represented to plaintiff that its relationship with him would solely be through Greenberg Traurig. In fact, according to plaintiff's own allegations, Morgan Stanley did just the opposite by holding itself out to be his employer and requiring him to report directly to Morgan Stanley employees. Therefore, plaintiff's failure to name Morgan Stanley in his EEOC charge is fatal to his Title VII and ADEA claims. Accordingly, defendant Morgan Stanley's motion to dismiss Counts One and Two is granted.

**B. Counts Four and Five**

An employer-employee relationship is required to sustain a claim under Title VII, the ADEA, and analogous claims under the NYHRL and the CHRL. *See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113 (2d Cir. 2000)* ("Title VII and the NYHRL cover 'employees,' not independent contractors."); *Frankel v. Bally, Inc., 987 F.2d 86, 88-89 (2d Cir. 1993)* (ADEA); *see also Scott v. Massachusetts Mut. Life Ins. Co., 86 N.Y.2d 429, 433-34, 657 N.E.2d 769, 633 N.Y.S.2d 754 (N.Y. 1995)* (NYHRL); [*13] *Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F. Supp. 2d 288, 296-97 (S.D.N.Y. 2005)* (noting that "claims made pursuant to the [NYHRL] and the [CHRL] are subject to

the same analysis as claims brought pursuant to the ADEA") (citation omitted).

Plaintiff concedes that he was employed by Greenberg Traurig but argues that a "joint employer" relationship existed between Morgan Stanley and Greenberg Traurig, such that Morgan Stanley would also be liable for any violations of employment law. [4] Such a relationship has been found to exist where another employer has immediate control over the employees of the plaintiff's nominal employer. *See N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994).* "Relevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Id.* Here, plaintiff merely alleges in conclusory fashion that Morgan Stanley was "involved in controlling [his] employment situation," his work performance, and his time and expense and that Morgan "directed [his] work on many occasions," requiring him to report to various Morgan Stanley employees. [5] *Id.* at PP12-14. However, [*14] plaintiff does not provide any supported allegations that Morgan Stanley exerted actual control over his hiring, firing, discipline, pay, or supervision. If anything, plaintiff's allegations suggest that Greenberg Traurig was in sole control of the terms of his employment. *See id.* at P93. For instance, plaintiff alleges that he was terminated pursuant to a review process conducted by Greenberg Traurig, *see id.* at PP35, 37, and that he was required to report to Morgan Stanley's Purchase office only after Greenberg Traurig was notified, *see id.* at P15. In short, plaintiff's allegations are insufficient to establish a joint employer relationship. Therefore, plaintiff's claims against Morgan Stanley for violations of the NYHRL and the CHRL are dismissed. [6]

[4] We note that plaintiff makes the conclusory allegation that defendants Greenberg Traurig and Morgan Stanley were "joint and/or integrated employers within the meaning of Title VII." Because there is even less factual support for the notion that Greenberg Traurig and Morgan Stanley functioned as a single integrated employer, *see Woodell v. United Way of Dutchess County, 357 F.Supp.2d 761, 767 (2005),* (S.D.N.Y. 2005) (noting factors assessed in integrated employer analysis), we focus on plaintiff's joint employer argument.

[*15]

[5] As detailed above, plaintiff also alleges that when he worked at Morgan Stanley's Purchase

office, Morgan Stanley directed Greenberg Traurig to charge his hours to Morgan Stanley's account. Am. Compl. P16. This allegation suggests that Greenberg Traurig charged Morgan Stanley for services rendered by plaintiff, which would support Morgan Stanley's argument that it was not a joint employer.

6   We note that this discussion also provides an alternative basis for dismissing Counts One and Two.

## C. Count Six

"To plead a valid cause of action for conspiracy under New York law, a plaintiff must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)* (citing *Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986))*. A claim of conspiracy therefore should be dismissed [*16] if the underlying independent tort has not been adequately pleaded. *See Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 2006 U.S. App. LEXIS 8213, 2006 WL 805418, at *5 (2nd Cir. 2006)* (citing *Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000))*. "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002)* (quoting *Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993))*.

Here, plaintiff fails to plead any independent tort on the part of defendant Morgan Stanley. While plaintiff has endeavored to plead independent torts against Greenberg Traurig, Morgan Stanley's alleged co-conspirator, plaintiff has failed to adequately allege any agreement or participation on the part of Morgan Stanley in these alleged torts. *See Fisk v. Letterman, 424 F. Supp. 2d 670, 2006 U.S. Dist. LEXIS 13843, No. 04 Civ. 6972 (VM), 2006 WL 839020, at *5 (S.D.N.Y. March 28, 2006)* [*17] (noting that even if plaintiff had pled an independent tort, civil conspiracy claim still would be dismissed because

plaintiff "offered no more than conclusory assertions" of defendant's involvement in the purported conspiracy). Therefore, Morgan Stanley's motion to dismiss Count Six is granted.

## D. Count Eight

Plaintiff's allegations in Count Eight, which focuses on his termination by Greenberg Traurig, also fail. In Count Eight plaintiff appears to assert a contract-based claim against defendant Morgan Stanley, alleging that a contractual obligation was breached when he was terminated. In light of the fact that Morgan Stanley was not plaintiff's employer and was not in control of his firing, Morgan Stanley's motion to dismiss Count Eight is granted. 7

7   In his Memorandum of Law in Opposition to Morgan Stanley's motion to dismiss, plaintiff also requests the right to submit a Second Amended Complaint to "replead any of the improperly plead causes of action." We deny plaintiff leave to replead because doing so would be futile. *See Min Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002); Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)* ("Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss...") (citation omitted).

## [*18] E. Sanctions

"*Rule 11* is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986)* (quoting *Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985))*. *Rule 11* sanctions are particularly justified where, as here, plaintiff was previously admonished by this Court that they could be imposed. *See Horton v. Trans World Airlines Corp., 169 F.R.D. 11, 16 (E.D.N.Y. 1996)*. While plaintiff's pro se status does not insulate him from the imposition of sanctions under *Rule 11, see Smith v. Education People, Inc., 233 F.R.D. 137, 142 (S.D.N.Y. 2005)*, pro se litigants are held to a more lenient standard, and the application of *Rule 11* may be "determined on a sliding scale according to the litigant's level of sophistication." *Horton, 169 F.R.D. at 16*. Applying these standards to this case, we deny Morgan Stanley's motion for *Rule 11* sanctions.

Morgan Stanley substantially fulfilled the "safe harbor" requirement by sending plaintiff a letter on August 25, 2005, shortly after the filing of the [*19] Amended Complaint, advising him of defendants' intention to move for *Rule 11* sanctions, and then not filing the motion for more than twenty-one days thereafter. [8] *See Fed. R. Civ. P. 11(c)(1)(A)*; *Pannonia Farms, Inc. v. USA Cable, 2004 U.S. Dist. LEXIS 23015, No. 03 Civ. 7841 (NRB), 2004 WL 1276842, at *10 (S.D.N.Y. June 8, 2004), aff'd on other grounds and remanded, 426 F.3d 650 (2d Cir. 2005)*. Nonetheless, plaintiff's conduct in pursuing this action does not rise to the level required under *Fed. R. Civ. P. 11(c)(1)(B)*. Although we have concluded that no joint employer relationship exists between Morgan Stanley and Greenberg Traurig, we cannot say that a pro se plaintiff, who on certain days reported to the Purchase office and allegedly was supervised by Morgan Stanley employees on those days, should have understood the case law to such a degree that his failure to withdraw his suit should subject him to sanctions.

> 8    After sending the letter, Morgan Stanley waited for more than twenty-one days before filing this motion. However, the letter inexplicably stated that plaintiff had only seven days within which to withdraw his complaint, rather than the twenty-one day safe harbor period accorded under the statute. Such a misstatement is especially troubling given plaintiff's pro se status.

### [*20] III. Plaintiff's Motion to Strike

"Upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. Motions to strike an affirmative defense are generally disfavored, and if there are questions of fact or disputed questions of law, the motion should be denied. *See Salcer v. Envicon Equities Corp., 744 F.2d 935, 938 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015, 106 S. Ct. 3324, 92 L. Ed. 2d 731 (1986)*. "A plaintiff must establish three criteria to prevail on a motion to strike an affirmative defense: First, there must be no question of fact that might allow the

defense to succeed. Second, there must be no substantial question of law that might allow the defense to succeed. Third, the plaintiff must be prejudiced by the inclusion of the defense." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc., 2005 U.S. Dist. LEXIS 9307, No. 04 Civ. 4099 (DLC), WL 1164073, at *3 (S.D.N.Y. May 18, 2005)* (quoting *SEC v. KPMG LLP, 2003 U.S. Dist. LEXIS 14301, No. 03 Civ. 671 (DLC), 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003))*. [*21]

Plaintiff fails to establish these criteria for any of the three affirmative defenses he moves to strike. First, the Greenberg Traurig defendants have appropriately asserted their defense of "failure to state a claim upon which relief can be granted" in their answer. *See Fed. R. Civ. P. 12(h)(2)*. Second, in regards to the Greenberg Traurig defendants' assertion that plaintiff has failed to exhaust his administrative remedies as to Trimarchi and Morita, we are not prepared to hold that there is no question of law or fact that would allow the defendants to succeed. Nor is plaintiff prejudiced by the inclusion of this affirmative defense. Third, the Greenberg Traurig defendants' assertion that plaintiff's claims are barred by his own improper conduct is a potentially valid counterclaim to allegations involving breach of contract. Therefore, plaintiff's motion to strike is denied.

### CONCLUSION

For the reasons set forth above, Morgan Stanley's motion to dismiss is granted, its motion for sanctions is denied, and plaintiff's motion to strike is denied.

**IT IS SO ORDERED.**

Dated: New York, New York

[*22] April 21, 2006

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

C



Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
**(Cite as: Not Reported in F.Supp.)**

Legnani v. Alitalia Linee Aeree Italiane
S.D.N.Y.,1997.

United States District Court, S.D. New York.
Josefina LEGNANI, Plaintiff,
v.
ALITALIA LINEE AEREE ITALIANE, s.p.a. and
Orazio Corallo, individually and in his capacity as
General Manager, U.S.A. and Mexico for Alitalia,
Defendants.
**No. 95 CV 0202(SAS).**

Oct. 16, 1997.

Mary D. Dorman, New York City, for plaintiff.
Elise M. Bloom, Miriam Lieberson, Jackson,
Lewis, Schnitzer & Krupman, New York City, for
defendants.

OPINION AND ORDER
SCHEINDLIN J.

### I. Introduction

**\*1** Plaintiff filed a complaint asserting claims for
violations of Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e*et seq.* ("Title VII") and
New York City Human Rights law pursuant to Sec-
tion 8-107 *et seq.* of the Administrative Code of the
City of New York (the "Admin.Code"). Plaintiff
claims that she was sexually harassed by a co-
worker and then demoted in retaliation for lodging
a complaint about the alleged conduct of the co-
worker. Defendants now move for summary judg-
ment pursuant to Fed.R.Civ.P. 56(b) and to strike
Mr. Corallo as a named party pursuant to
Fed.R.Civ.P. 12(f). For the reasons stated below,
defendants' motion for summary judgment is gran-
ted in part and denied in part and the motion to
strike is denied.

### II. Legal Standard

A motion for summary judgment shall be granted
only "if the pleadings, depositions, answers to in-
terrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c); *see also Celotex Corp. v.
Cartrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91
L.Ed.2d 265 (1986). A court must view the evid-
ence in the light most favorable to the non-moving
party and must draw all inferences in favor of that
party. *See Hanson v. McCaw Cellular Communica-
tions, Inc.,* 77 F.3d 663 (2d Cir.1996).

Courts must be particularly cautious about granting
summary judgment to an employer in a discrimina-
tion case when the employer's intent is at issue. *See
Gallo v. Prudential Residential Servs., Ltd. Part-
nership,* 22 F.3d 1219, 1224 (2d Cir.1994). Even in
these cases, however, a "plaintiff must provide
more than conclusory allegations of discrimination
to defeat a motion for summary judgment."
*Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d
Cir.1997). Instead, the plaintiff "must come for-
ward with evidence that would be sufficient to sup-
port a jury verdict in [her] favor." *Goenaga v.
March of Dimes Defects Foundation,* 51 F.3d 14,
18 (2d Cir.1995). Additionally, "[t] he mere exist-
ence of a scintilla of evidence in support of the
[non-movant's] position will be insufficient; there
must be evidence on which the [trier of fact] could
reasonably find for the [non-movant]." *Anderson v.
Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct.
2505, 91 L.Ed.2d 202 (1986); *Sports Authority, Inc.
v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d
Cir.1996).

### III. Factual Background

Plaintiff is currently an employee of Alitalia and
has been for over twenty years. She began working
for Alitalia as an accounting clerk in 1972. *See* De-
fendants' Statement of Material Facts Not in Dis-
pute ("Defendants' Statement") ¶ 1. Throughout
her time at Alitalia, she received above average bo-
nuses, personnel evaluations and merit increases in
pay. *See* Deposition of Marianna Paradisi ("Ms.
Paradisi Dep.") at 26, 29, 30. In 1986, plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
(Cite as: Not Reported in F.Supp.)

began working in the Customer Relations Department. In 1988 Marianna Paradisi became the Supervisor of this Department. While working for Ms. Paradisi plaintiff received above average performance evaluations. Ultimately, Ms. Paradisi recommended plaintiff for a promotion. *See id.* at 31, 32, 40. In July, 1991, plaintiff was promoted to supervisor of the Customer Relations Department after Ms. Paradisi had transferred to the Human Resources Department. *See* Defendant's Statement ¶ 2.

*2 Plaintiff complains that on the morning of November 12, 1992, a co-employee, Mr. Paradisi, grabbed his crotch and thrust his pelvis at her. *See* Deposition of Josefina Legnani ("Legnani Dep.") at 18. She also claims that he had touched his crotch in her presence on three or four prior occasions. *See id.* at 23-25. Mr. Paradisi does not supervise or work with plaintiff. Rather, he works at the opposite end of the building from plaintiff. *See id.* at 41-42. After the pelvis thrusting incident, plaintiff allegedly complained to the Supervisor of Selection and Training in the Human Resources Department, Ms. Paradisi, who also happened to be Mr. Paradisi's wife. *See id.* at 19. Ms. Paradisi denies that plaintiff made any such complaint. See Ms. Paradisi Dep. at 114. Plaintiff also alleges that after she complained of Mr. Paradisi's activity he called her and threatened that "he could do what he wanted at Alitalia and he would contact the right person to punish her." *See* Legnani Dep. at 40.

Prior to the alleged incident of November 12, 1992, plaintiff had been embroiled in a controversy with two of her superiors. In August of 1992, plaintiff's secretary was transferred to another department by Gianfranco Bianchi, Personnel Manager of North America. For approximately two months after the secretary's transfer there were discussions concerning the proper duties of the replacement. It was undecided whether the duties would involve baggage claim, passenger claim or secretarial work. *See id.* at 71, 73. According to plaintiff, she was caught between Mr. Corallo, General Manager U.S.A ., and Mr. Bianchi because they had different opinions as to the proper duties for the new employee.

On October 27, 1992, at Mr. Corallo's request, plaintiff prepared a memo describing the duties of the new employee. In this memo, plaintiff indicated that the new employee's job included some clerical tasks. Plaintiff gave a copy of the memo to Mr. Corallo and Mr. Bianchi. *See id.* at 68, 69. On October 30, 1992, Mr. Bianchi told plaintiff that the employee would only handle passenger claims and that plaintiff should change the memo to reflect this job description. She refused, arguing that Mr. Corallo had already approved the memo. Mr. Bianchi told plaintiff that if she did not change the memo she would be demoted. *See id.* at 70. The next day, plaintiff complained to Mr. Corallo that she was being whipsawed between him and Mr. Bianchi. On November 2, 1992, Mr. Corallo told plaintiff that the memo he approved was still valid. *See id.* at 70-72.

On November 12, 1992, several hours after plaintiff reported the alleged incident with Mr. Paradisi, plaintiff was summoned to a meeting with Mr. Bianchi and Mr. Corallo where plaintiff sided with Mr. Corallo regarding the memo. Mr. Bianchi became very emotional and said that he was going to demote Ms. Legnani. Thirty minutes later plaintiff was summoned to Mr. Bianchi's office where he proceeded to demote her. Mr. Bianchi gave plaintiff her demotion letter to sign but she refused. Plaintiff contacted Mr. Corallo the next day. He indicated that she was still a supervisor and that she should follow his directive regarding the memo. Three hours later, however, plaintiff received a letter which had been signed by both Mr. Bianchi and Mr. Corallo demoting her from Supervisor of Customer Relations to Accounts Control Representative. Later that day Mr. Corallo confirmed that she had been demoted. *See id.* at 10-16.

IV. *Discussion*

A. Hostile Work Environment

*3 Sexual harassment which establishes a "hostile or abusive work environment" constitutes a violation of Title VII.[FN1] *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 3
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
**(Cite as: Not Reported in F.Supp.)**

L.Ed.2d 49 (1986) A hostile work environment occurs when an employer's conduct " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Id.* at 65 (quoting 29 C.F.R. § 1604.11(a)(3) (1985)). Thus, a claim of hostile work environment is alleged "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Tomka,* 66 F.3d at 1305 (quoting *Meritor,* 477 U.S. at 65). However, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Merely offensive conduct is not actionable. *See id* .Similarly, the incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive, and thus actionable. *See Kotcher v. Rosa & Sullivan Appliance Center Inc.,* 957 F.2d 59, 62 (2d Cir.1992); *see also Cosgrove v. Sears, Roebuck, & Co.,* 9 F.3d 1033, 1042 (2d Cir.1993).

> FN1. A sexual harassment claim under the Admin.Code is governed by the same standards as a claim under Title VII. *See Tomka v. Seiler,* 66 F.3d 1295, 1304 (2d Cir.1995).

In this case, plaintiff has not alleged incidents which created an objectively hostile environment. The court in *Harris* noted that determining whether a hostile environment objectively exists is not a "mathematically precise test," and one must examine "all the circumstances." 510 U.S. at 22-23. For example, a single instance of a sexual assault has been held sufficient to support a claim of a hostile work environment as has repeated episodes of verbal abuse.[FN2] On the other hand, courts have held that a single instance of physical contact did not create a hostile work environment nor did three sexually suggestive comments made by a superior over a three month period.[FN3] Here, plaintiff complains of four to five instances of sexual harassment (not-contact), occurring over a two month period which were committed by a co-employee with whom she did not work and had limited contact. Plaintiff's own testimony indicates that three or four of the incidents were not severe. She stated that when Mr. Paradisi had touched his crotch in the past it had not been done in a shocking way and that she just thought that "he likes very much sport, he's a sporty guy, etc., etc. he does that as an instinct, you know. Some men do that." *See* Legnani Dep. at 24. As a matter of law, these incidents do not create a hostile work environment. They did not involve physical contact, verbal abuse or unwanted sexual advances. At the time the alleged incidents occurred plaintiff did not believe the actions to be hostile or abusive. Plaintiff also alleged one instance of a sexual gesture which she found shocking, where the same co-employee grabbed his crotch and thrust his pelvis at her. While this incident can be characterized as sexually charged, it falls in the category of a vulgarity which, while offensive, does not rise to the level of a hostile work environment. Once again, this incident did not did not involve any physical contact, verbal abuse or unwanted sexual advances. Because plaintiff has failed to demonstrate a hostile work environment, summary judgment is granted with respect to the sexual harassment claims.

> FN2. The *Tomka* court held that one incident of rape by an employee was sufficient to constitute a hostile work environment. 66 F.3d at 1305 (2d Cir.1995). In *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 (9th Cir.1994), the court reversed a grant of summary judgment where a supervisor's continuous sexually abusive comments created a hostile work environment.

> FN3. In *Samuels v. New York State Dep't of Correctional Services,* No. 94 CIV. 8645, 1997 WL 253209 (S.D.N.Y. May 14, 1997), the court granted summary judgment dismissing claim that a single incident of defendant poking plaintiff in the breast created a hostile work environment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 4
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
**(Cite as: Not Reported in F.Supp.)**

In _McKenzie v. Illinois Dep't of Transportation,_ 92 F.3d 473 (7th Cir.1996), the court affirmed summary judgment where a supervisor's three offensive sexually suggestive comments were made over a three month period, did not constitute a hostile work environment.

### B. Retaliation

**\*4** Section 704(a) of Title VII prohibits retaliatory termination of employees for opposing alleged discriminatory practices. When examining a retaliation claim, a court must apply the three-step burden shifting analysis articulated in _McDonnell Douglas Corp. v. Green,_ 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). _See also St. Mary's Honor Ctr. v. Hicks,_ 509 U.S. 502, 506-08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff has the initial burden of establishing a prima facie case of retaliation by a preponderance of the evidence. _See McDonnell,_ 411 U.S. at 802. To establish a prima facie case, a plaintiff must show that: (1) she participated in a protected activity; (2) the defendant knew about such activity; (3) the defendant took adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. _See Wanamaker v. Columbian Rope Co.,_ 108 F.3d 462, 465 (2d Cir.1997) (retaliation claim under ADEA); _see also Tomka,_ 66 F.3d at 1308.

The level of proof plaintiff must present in order to demonstrate a prima facie case is "minimal." _Fisher v. Vassar College,_ 114 F.3d 1332, 1337 (2d Cir.1997). In fact, a Title VII plaintiff can successfully state a prima facie case without adducing enough evidence to support a rational jury verdict in her favor. _See id._ Once this burden is met, the defendant must then "produc[e] evidence that the plaintiff was [discharged] ... for a legitimate, nondiscriminatory reason." _Texas Dep't of Community Affairs v. Burdine,_ 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant establishes such a reason, the presumption of discrimination established by the prima facie case disappears, and the plaintiff "must ... point to suffi-

cient evidence to reasonably support a finding that [she] was harmed by the employer's illegal discrimination." _Fisher,_ 114 F.3d at 1337.

Making all reasonable inferences in favor of the non-moving party, plaintiff has successfully established a prima facie case of retaliation. Plaintiff alleged that she reported a claim of sexual harassment on the morning of November 12, 1992 to a supervisor in the Human Resources Department. _See_ Legnani Dep. at 19. This allegation is sufficient to establish the first two elements of her retaliation claim, namely that she engaged in protected activity and that her employer knew about the activity. _See Tomka,_ 66 F.3d at 1308; _Murray v. New York University College of Dentistry,_ 57 F.3d 243, 249-50 (2d Cir.1995). It is undisputed that plaintiff suffered an adverse employment action when she was demoted in the afternoon of November 12, 1992. Defendants focus their attack on the fourth prong of plaintiff's prima facie case arguing that she has failed to establish a causal connection between the adverse employment action and her engaging in the protected activity. Accepting plaintiff's description of the events, one can infer that a causal connection existed. First, Ms. Paradisi, Mr. Paradisi and Mr. Bianchi all knew each another and Mr. Paradisi allegedly threatened to contact the right person to punish her. _See_ Legnani Dep. at 40. Second, only hours after Ms. Legnani allegedly complained to Ms. Paradisi, she was demoted by Mr. Bianchi. The close proximity of time between Ms. Legnani's complaint and her demotion, taken together with the fact that the principal parties were friendly, creates an inference sufficient to support plaintiff's claim that her complaint caused the demotion.

**\*5** Defendants further argue, however, that even if plaintiff has established a prima facie case of retaliation she fails to rebut their legitimate proffered reason for the adverse employment action, namely that she was demoted for insubordination when she did not comply with Mr. Bianchi's instructions regarding a memo. Defendants' argument fails, however, because plaintiff has successfully raised a material issue of fact, which could support a ration-

Not Reported in F.Supp.                                                                                                        Page 5
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
(Cite as: Not Reported in F.Supp.)

al reviewer's finding that the defendants' proffered reason is merely pretextual and that discrimination is more likely than not the real reason for the adverse decision. *See Raskin v. The Wyatt Co.,* No. 96-7570, slip op. 6299, 6316(2d Cir. Sept. 9, 1997).

Plaintiff asserts that the defendants manufactured evidence retroactively in a effort to bolster their proffered reason for her demotion. The allegedly manufactured evidence is a letter signed by Michael Vargosko dated November 11, 1992. *See* Affidavit of Mary D. Norman, Ex. N ("Ex.N"). Mr. Vargosko was the new employee whose duties were the subject of the memo that defendants claim ultimately led to plaintiff's demotion. *See* Legnani Dep. at 65-69. This letter was directed to Mr. Bianchi, the individual who demoted plaintiff, and it pleads with him to deal with the controversy which was the subject of the memo. *See* Ex. N. If the letter is authentic, it could support an inference that the demotion on November 12, 1997 was initiated because of this letter and not because of plaintiff's complaint about sexual harassment. However, plaintiff alleges that the letter was manufactured. She arrives at this conclusion because Mr. Vargosko's signature on the letter does not match his signature on another document despite the fact that he claims to have signed both documents. *See* Affidavit of Michael A. Vargosko, dated Sept. 30, 1997, at ¶¶ 1, 2. A handwriting expert hired by the plaintiff supports the position that Mr. Vargosko did not sign the letter. *See* Affidavit of Jean Peetz, dated Sept. 7, at ¶ 3. Because the letter is at the heart of defendants' proffered reason for the demotion, evidence that it was manufactured retroactively could easily lead a reasonable finder of fact to conclude that the defendants are lying about their proffered reason for the demotion. Additionally, such evidence could lead a reasonable finder of fact to conclude that illegal discrimination was more likely than not the true reason for the demotion when combined with the fact that the demotion followed plaintiff's complaint by only a few hours.

### C. Claims against Mr. Corallo

Plaintiff also asserted Title VII and Admin.Code

claims against Mr. Orazio Corallo in his individual capacity. Because individual employees cannot be held liable under Title VII, defendants' motion for summary judgment as to the Title VII claim against Mr. Corallo is granted. *See Tomka,* 66 F.3d at 1313. However, unlike Title VII, an Admin.Code § 8-107(1)(a) claim can be asserted against an individual employee.[FN4] Nevertheless, this claim must be dismissed because plaintiff's service of process upon Mr. Corallo was fatally flawed.

> FN4. The plain language of 8-107(a)(1) provides for liability against individual employees where the statute makes it unlawful for "an employer or an employee ... to discriminate against such person in compensation or in terms, conditions or privileges of employment."

*6 Plaintiff attempted to serve Mr. Corallo pursuant to Fed.R.Civ.P. 4(e) ("Rule 4(e)") which provides for service upon individuals within a judicial District of the United States. Rule 4(e)(i)(1) allows a party to effect service of process pursuant to the law of the State in which the district court is located. If Rule 4(e) was applicable in this case, plaintiff would have been allowed to follow the procedures set forth in New York CPLR § 308.[FN5] Defendants point out, however, that Mr. Corallo had left the United States to work in Brazil on November 1, 1993. *See* Affidavit of Rita Sangiamo, Human Resources/Industrial Relations Officer for Alitalia, dated August 8, 1997, at ¶ 3. Because Mr. Corallo was not within a judicial district of the United States, plaintiff was obliged to comply with Rule 4(f) which provides for service upon individuals in a foreign country. Plaintiff did not make any attempt to comply with Rule 4(f) and thus failed to effect service upon Mr. Corallo.[FN6] Because the plaintiff failed to serve Mr. Corallo, this court lacks personal jurisdiction over the defendant and the Admin.Code claim is dismissed without prejudice.[FN7]

> FN5. Plaintiff attempted to effect service according to CPLR § 308(2) by serving a copy of the summons and complaint upon a receptionist at 666 Fifth Avenue, New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 6
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632
**(Cite as: Not Reported in F.Supp.)**

York, New York, which is Alitalia's New York office, on January 18, 1995, and then mailing the summons to the same address.

FN6. According to Rule 4(m), the 120 day time limit between filing of complaint and service of process does not apply to service in a foreign country pursuant to Rule 4(f).

FN7. According to Admin.Code § 8-502(d) an action must be commenced within three years of the alleged unlawful incident. In this case, the alleged unlawful incident occurred on November 12, 1992 and the plaintiff filed the complaint on January 12, 1995 which is within three years of the alleged unlawful incident. See *West v. Conrail*, 481 U.S. 35, 38-39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) (filing of complaint commences action and tolls statute of limitations period in federal court). *See also*New York CPLR § 304 (McKinney 1996) (filing of complaint commences action).

### D. Motion to Strike

Defendants move to strike Mr. Corallo's name from the caption of this case pursuant to Fed.R.Civ.P. 12(f). Rule 12(f) provides for the removal of material from a pleading that the court finds "redundant, immaterial, impertinent, or scandalous." " 'Motions to strike, while not favored, may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant.' " *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226, 1241-1242 (S.D.N.Y.1995) (quoting *F.R.A. S.p.A. v. Surg-O-Flex*, 415 F.Supp. 421, 427 (S.D.N.Y.1976)). In this case, Mr. Corallo was a participant in plaintiff's demotion. Simply because plaintiff failed to serve Mr. Corallo with process does not mean that he cannot be a party. The plaintiff tolled the three year statute of limitations period when she filed her complaint. See *supra* note 7. Therefore, failure to serve Mr. Corallo only results in dismissal without prejudice. Additionally, defendants have not offered any reasons why Mr. Corallo's inclusion is redundant, immaterial, impertinent, or scandalous. Therefore, the motion to strike is denied.

### V. Conclusion

For the reasons stated above, defendants' motion for summary judgment is granted with respect to plaintiff's claim of sexual harassment. Defendants' motion for summary judgment is denied with respect to plaintiff's retaliation claim. Summary judgment is granted as to the Title VII claim against Mr. Corallo, while the remaining Admin Claim against Mr. Corallo is dismissed without prejudice. Defendants' motion to strike is denied. A pretrial conference is scheduled for October 31, 1997 at 10 a.m.

SO ORDERED.

S.D.N.Y.,1997.
Legnani v. Alitalia Linee Aeree Italiane
Not Reported in F.Supp., 1997 WL 642556 (S.D.N.Y.), 75 Fair Empl.Prac.Cas. (BNA) 632

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.