**TAB A**

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

West 79th Street Corp. v. Congregation Kahl Minchas Chinuch
S.D.N.Y.,2004.

United States District Court,S.D. New York.
WEST 79TH STREET CORP., Plaintiff,
v.
CONGREGATION KAHL MINCHAS CHINUCH, Chaim Babad, C. Babad Management, LLC, Babad Management Co., Sheldon Becker, Alan Berenbaum, Rick Lesch, the Board of Managers of the Atrium Condominium, Signature Properties NY, LLC, Alon Vaknin, Blake Baknin, A. Hospitality Co., Inc. d/b/a Metro-Home.com, Metro-Home.com and Linda Coughlin, Defendants.
No. 03 Civ. 8606RWS.

Sept. 29, 2004.

Morrison Cohen Singer & Weinstein, New York, NY, By: Edward P. Gilbert, Andrew Schriever, for Plaintiff, of counsel.
Edwin Rubin, New York, NY, for Defendants.
Israel Vider, Brooklyn, NY, for Congregation Kahal Minchas Chinuch, Chaim Babad, C. Babad Management, LLC, Babad Management Co., Sheldon Becker, Alan Berenbaum, Rick Lesch and The Board of Managers of the Atrium Condominium.
Wayne Greenwald, New York, NY, By: Wayne Greenwald, for Signature Properties NY, Alon Vaknin, Blake Vaknin, of counsel.
Reiss, Eisenpress & Eisenberg, New York, NY, By: Sherri L. Eisenpress, Lloyd M. Eisenberg, for Linda Coughlin and Metro-Home, of counsel.

*OPINION*
SWEET, J.
*1 In three separate motions, defendants Congregation Kahl Minchas Chinuch ("KMC"), Chaim Babad ("Babad"), C. Babad Management, LLC and Babad Management Co. (collectively, "Babad Management"), Sheldon Becker ("Becker"), Alan Berenbaum ("Berenbaum"), Rick Lesch ("Lesch"), the Board of Managers of the Atrium Condominium (the "Atrium Board"), Signature Properties NY, LLC ("Signature"), Alon Vaknin ("Alon"), Blake Vaknin ("Blake"), Linda Coughlin ("Coughlin") and Metro-Home N.Y. LLC ("Metro-Home") (sued herein as A Hospitality Co. Inc. ("Hospitality") d/b/a/ Metro-Home.com ("Metro-Home.com")) (collectively, "Defendants") have moved to dismiss the complaint of plaintiff West 79th Street Corp. ("W79") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions are granted, and this case is closed.

*Parties*

W79 is a corporation organized under the laws of the State of New York with its principal place of business at 276 Fifth Avenue, Suite 708, New York, New York.

The Atrium Board is alleged to be the statutory representative of The Atrium Condominium ("The Atrium" or the "Cond-op"), a condominium/cooperative created pursuant to a Declaration of Condominium recorded on April 17, 1984 (the "Declaration"), and located at 160 Bleeker Street, New York, New York. The Cond-op consists of a Commercial Unit and a Residential Unit.

KMC is alleged to be a not-for-profit religious corporation organized under the laws of the State of New York as a domestic not-for-profit organization. KMC is owned and/or controlled by Babad.

Babad is an individual residing in Brooklyn, New York. He is alleged to be President of the Atrium Board as well as President of the Board of Directors of the Residential Unit (the "Residential Unit Board") and the owner of Babad Management.

C. Babad Management, LLC, is alleged to be a corporation organized under the laws of the State of New York. Babad Management Co. is allegedly a domestic business whose address is in Brooklyn, New York.

Becker is an individual residing in Brooklyn, New

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

York, who, it is alleged, previously resided at The Atrium and is a member of the Atrium Board and of the Residential Unit Board. He is allegedly employed by Babad Management.

Berenbaum is an individual residing in New York, New York, and an alleged member of the Atrium Board and of the Residential Unit Board.

Lesch is an individual residing in Scarsdale, New York, who is alleged to have previously resided at The Atrium and to be a member of the Atrium Board and of the Residential Unit Board.

Signature is alleged to be a domestic business whose corporate address is care of Alon in New York, New York. Alon and Blake are individuals both residing in New York, New York and both are alleged to be principals of Signature.

Metro-Home is alleged to be a domestic business with offices located at 515 Madison Avenue, New York, New York. Coughlin is an individual residing in New York, New York, and an alleged principal of Metro-Home.

*Prior Proceedings*

*2 W79 commenced this action on October 31, 2003,[FN1] alleging, as a first cause of action against all Defendants and the basis for this Court's subject matter jurisdiction under 28 U.S.C. § 1331, civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as codified in 18 U.S.C. § 1962. The complaint further asserts claims against KMC, Babad, Babad Management, Becker, Berenbaum, Lesch, and the Atrium Board (collectively, the "Board Defendants") for breach of fiduciary duty, breach of contract and of the implied covenant of good faith and fair dealing, *ultra vires* acts, an accounting, and conversion, and seeks a declaratory judgment. A final claim of common-law trespass is asserted against all Defendants.

> FN1. The filing of this action appears to be the latest volley in a long-standing dispute among many of the parties named herein, thus far litigated in the state courts.

*e.g., Bd. of Managers of the Atrium Condominium v. West 79th Street Corp., 2 A.D.3d 246, 770 N.Y.S.2d 17 (N.Y.App. Div. 1st Dep't 2003)* (affirming a trial court's December 26, 2001 ruling that W79 held neither title to nor an easement over the vaults or west cellar adjacent to or under the Cond-op).

Signature, Alon, and Blake (collectively, the "Signature Defendants"), and Coughlin and Metro-Home (collectively, the "Metro-Home Defendants") separately moved to dismiss W79's complaint on December 22, 2003, on the grounds that W79 failed to state a RICO claim against them, failed to satisfy Fed.R.Civ.P. 9(b) in its RICO claim, and, with regard to the Metro-Home Defendants, failed to state a claim for common-law trespass against them. The Board Defendants thereafter filed a motion to dismiss W79's complaint raising similar grounds. Following further briefing by the parties, oral arguments were heard on March 24, 2004, at which time the motions were deemed fully submitted.

*The Facts*

The following facts are drawn from W79's complaint and do not constitute findings of fact by the Court.

According to the complaint, the Cond-op is a two-unit condominium/cooperative located in Greenwich Village, consisting of a Commercial Unit owned by W79 and a Residential Unit owned by a coop corporation named 160 Bleeker Street Owners Corp. (the "Coop Corporation"). The Commercial Unit consists of space in the basement and first floor of the building, including several retail stores, two apartments and space in the ground floor cellar which contains a club or theater space and storage spaces for the retail stores above. The Residential Unit consists of 189 apartments on floors 2 through 10 of the Cond-op.

The Cond-op, it is alleged, is governed by the Declaration and By-Laws that were filed with the State of New York at the time of conversion of the property into a Cond-op in 1984. Pursuant to the

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

Cond-op's By-Laws, the affairs of the Condominium are to be governed by the Board, which at all relevant times was comprised of Babad, Becker, Lesch, Berenbaum, as well as a single representative from W79's Commercial Unit. Pursuant to Section 9(a) of the Declaration, "[n]o commercial business shall be permitted in the Residential Unit."(Compl. at ¶ 50 (internal quotation marks omitted).)

W79 alleges that in or about 1984, 160 Bleeker Street Associates, the original coop sponsor, converted the building from a rental building into a cooperative apartment complex pursuant to an Offering Plan for the Cooperative Ownership of the Residential Unit of the Atrium Condominium (the "Offering Plan") filed with the Attorney General of the State of New York. The Offering Plan was subsequently amended to a non-eviction plan. Of the 189 apartments in the Residential Unit, 115 of the apartments (the "Unsold Shares") are owned by KMC, a successor to 160 Bleeker Street Associates. Babad purchased these 115 Unsold Shares through KMC in or about March 1995. KMC is owned by Babad, whose father founded KMC in the 1950's.

*3 As part of the transaction to purchase the unsold shares, according to the complaint, Babad insisted that the Coop Corporation discharge existing building management and instead retain Babad Management to manage the property. The Coop Corporation, acting in the name of the Cond-op Board, executed a contract with Babad Management to run the building. Babad Management named Becker to be responsible for management of the building.

Babad is alleged to have acted in violation of the Cond-op's By-Laws and the Offering Plan in various ways, including by exercising voting control over the Residential Unit Board since taking controlling ownership of the Residential Unit and electing and appointing his own Residential Unit Board, including himself, Becker, Berenbaum and Lesch. It was on this basis that Babad was able to take control of the Atrium Board pursuant to Article III, § 1 of the By-Laws, which provides that the Residential Unit has the right to designate four members of the Atrium Board.

Becker, Berenbaum and Lesch are all allegedly beholden to and controlled by Babad. Becker is employed by Babad's management company and Berenbaum and Lesch also receive financial remuneration from Babad or entities controlled by Babad.

According to the complaint, the Board Defendants' control of both the Residential Unit Board and the Atrium Board has allowed them to operate a "short stay" hotel in The Atrium, and they have combined apartments (a structural modification) in violation of the Declaration and applicable law. It is alleged upon information and belief that KMC and Babad purchased the Unsold Shares for the purpose of retaining the Unsold Shares and leasing apartments and/or operating a hotel while sheltering the profits through a tax-exempt religious corporation, KMC, for the benefit and profit of all Defendants.

Signature and Metro-Home, through the control of Alon, Blake and Coughlin, are alleged to be acting in concert with the Board Defendants and to be facilitating the advertising and booking of Babad's apartments through the use of the World Wide Web. Signature is further alleged to be a party to the Board Defendants' violations of the Declaration, By-Laws and Certificate of Occupancy, *interalia*, through its maintenance of an office at 160 Bleeker Street in a suite that Signature rents from Babad through KMC or owns as a result of a transfer from Babad or KMC.

It is alleged upon information and belief that KMC's tax-exempt status as a religious corporation allows "them" to avoid paying various state and local taxes that a hotel would normally pay. (Compl. at ¶ 83.) It is further alleged upon information and belief that none of the proper fire and safety permits necessary to run a hotel have been procured.

W79 claims that it has been injured as a result of the alleged hotel operation in that the purported hotel operation damages the interests of W79 as owner of the Commercial Unit, leads to increased wear and tear, thereby causing Defendants to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

charge higher maintenance fees assessed in the form of common charges, and decreases the value of the property. W79 further claims that increased fees have resulted from expenses such as maid service and towel service necessitated by the claimed hotel operation and that W79 has been injured by the hotel operation insofar as its apartment has been used to run the hotel housekeeping services, thus interfering with its property rights and depriving W79 of rental income. W79 also alleges that it has been forced to incur the expense of over $1 million in infrastructure improvements and repairs.

*Discussion*

*4 In considering a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor,"*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Dismissal is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."*Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000).

*I. W79 Has Not Adequately Pled a Violation of the RICO Statute*

W79's first cause of action against Defendants arises under RICO, which provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of Section 1962 [of Title 18]."18 U.S.C. § 1964(c). W79 has alleged that Defendants violated Section 1962(a), Section 1962(c), and Section 1962(d).[FN2]

FN2. In certain of their moving papers Defendants argue that a claim under subsection (b) of Section 1962 should be dismissed. As W79 cites only subsections (a), (c), and (d) in its papers submitted in opposition to the various motions to dismiss, it is deemed to have abandoned any claim that it may have sought to make in the complaint under subsection (b).

Section 1962 provides, in relevant part:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962. To state a claim for civil damages under RICO, a plaintiff has a twofold pleading burden. First, the plaintiff must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962. See*Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983). Second, the plaintiff must allege that he or she was injured in his or her business or property by reason of the violation of Section 1962. See18 U.S.C. § 1964(c); *Moss,* 719 F.2d at 17.

To plead a violation of the substantive RICO statute, a plaintiff must allege the existence of seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."*Moss, 719 F.2d at 17* (citing 18 U.S.C. §§ 1962(a), 1962(b) and 1962(c)); *The Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd., 154 F.Supp.2d 682, 690 (S.D.N.Y.2001)*. As has been explained on a previous occasion,

*5 RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint. Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.

*Lesavoy v. Lane, 304 F.Supp.2d 520, 532 (S.D.N.Y.2004)* (quoting *Zaro Licensing, Inc. v. Cinmar, Inc., 779 F.Supp. 276, 284 (S.D.N.Y.1991)*) (internal quotation marks and citation omitted).

Racketeering activity "consists of no more and no less than the commission of a predicate act."*Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)*. RICO defines "racketeering activity" as any act that is indictable under, *interalia,* 18 U.S.C. §§ 1956 (prohibiting money laundering), 1957 (prohibiting engaging in monetary transactions in property derived from specified unlawful activity), 1341 (prohibiting mail fraud), 1343 (prohibiting wire fraud), and 1952 (prohibiting racketeering). 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" is defined as "requiring the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten year period."*Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1344 (2d Cir.1994); seealso* 18 U.S.C. § 1961(5); *Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir.2004)*.

An "enterprise" under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This list is illustrative rather than restrictive. *SeeUnited States v. Masters, 924 F .2d 1362, 1366 (7th Cir.1991)* ("The statute says 'enterprise includes'-not 'enterprise means.' The point of the definition is to make it clear that it need not be a formal enterprise."); *United States v. Huber, 603 F.2d 387, 394 (2d Cir.1979)* ("The definition of 'enterprise' is a list beginning with the word 'includes.' This indicates that the list is not exhaustive but merely illustrative."). Nonetheless, certain characteristics must be established to prove a RICO enterprise exists: "(1) it must be 'an ongoing organization, formal or informal'; (2) it must function as a continuing unit; and (3) it must be more than the 'pattern of racketeering activity'-that is, it must be 'an entity separate and apart from the pattern of activity in which it engages.' " *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F.Supp.2d 345, 365 (E.D.N.Y.2000)* (quoting *United States v. Turkette, 452 U.S. 576, 583 (1981))*.

It has been suggested that "the civil provisions of [RICO] are the most misused statutes in the federal corpus of law."*Spoto v. Herkimer Cty. Trust, No. 99 Civ. 1476, 2000 WL 533293, at *1 (N.D.N.Y.2000); seealsoGoldfine v. Sichenzia, 118 F.Supp.2d 392, 394 (S.D.N.Y.2000)* ("I surmise that every member of the federal bench has before him or her at least one-and possibly more-garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages by resort to what [has been] referred to as 'the litigation equivalent of a thermonuclear device'-a civil RICO suit.") (quoting *Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998)* (quoting *Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996)* (citations omitted), *aff'd,113 F.3d 1229 (2d Cir.1997)*)). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.' " *Katzman, 167 F.R.D. at 655* (quoting *Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990))*; *accordSchmidt, 16 F.Supp.2d at 346*. To this end, courts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 6
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

*6 Here, as set forth below, W79 has failed to state a claim under RICO because it has failed to allege "predicate acts" of racketeering activity and otherwise failed to allege a violation of subsections (a), (c) and (d) of Section 1962.

A. *W79 Has Not Adequately Pled a Predicate Racketeering Activity*

To state a claim under Subsections 1962(a) and 1962(c), a plaintiff must allege that a defendant engaged in two or more acts constituting a pattern of racketeering activity. See*Moss, 719 F.2d at 17;seealsoUSA Certified Merchants, LLC v. Koebel, 262 F.Supp.2d 319, 331 (S.D.N.Y.2003), reconsideration denied,273 F.Supp.2d 501 (S.D.N.Y.2003)*. W79 alleges that Defendants engaged in predicate acts insofar as Defendants' conduct with respect to the purported hotel operation amounts to mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, racketeering in violation of 18 U.S.C. § 1952, and money laundering in violation of 18 U.S.C. §§ 1956 and 1957, each of which indictable offenses constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B). W79 also alleges that Defendants "avoided tax obligations under the Internal Revenue Code, New York State tax laws, and violated New York law, including but not limited to the Martin Act and other state and local laws prohibiting the illegal operation of a hotel as well as the Declaration and By-Laws and Certificate of Occupancy for the Condop."(Compl. at ¶ 105.) Defendants argue that W79's allegations of predicate acts are insufficient and require dismissal of W79's RICO claim.

1. *Mail and Wire Fraud*

To establish the predicate act of mail or wire fraud a plaintiff must allege that "the defendants engaged in '(1) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." ' *USA Certified Merchants, 262 F.Supp.2d at 332* (quoting *United States v. Autuori, 212 F.3d 105, 115 (2d Cir.2000))*; seealso*O'Malley v. New York City Transit Auth., 896 F.2d 704, 706 (2d Cir.1990)*. It must be alleged that "the defendant knowingly participated in the scheme and that the misrepresentations were material." *USA Certified Merchants, 262 F.Supp.2d at 332* (citing *Autuori, 212 F.3d at 115;S.O.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996))*; seealso*Laro, Inc. v. Chase Manhattan Bank (Nat'l Ass'n), 866 F.Supp. 132, 137 (S.D.N.Y.1994), aff'd,60 F.3d 810 (2d Cir.1995)*. Although the mail or wire communications at issue "need not themselves contain fraudulent communications, [ ... they] must be 'incident to an essential part of the scheme,' which itself has a fraudulent and deceptive purpose. *USA Certified Merchants, 262 F.Supp.2d at 332* (quoting *Schmuck v. United States, 489 U.S. 705, 711 (1989))*.

Where a plaintiff is alleging predicate acts involving mail and wire fraud, the allegations must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. See*McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992); Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 49 (2d Cir.1987), overruled on other grounds,United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989) (enbanc )*; *USA Certified Merchants, 262 F.Supp.2d at 332*. According to Rule 9(b),

*7 In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

To satisfy Rule 9(b), a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."*Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989)*; seealso*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992-93 (7th Cir.1991)* (explaining that mere references to plans and schemes are too conclusory to satisfy Rule 9(b)); *Atl. Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505, 512 (S.D.N.Y.1990)* (concluding that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 7
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

allegations that "the entire loan transaction was part of a scheme by all defendants or some of them to gain 'control' of [a] venture" were inadequate to withstand a motion to dismiss as the complaint "sets forth no facts from which the existence of such a scheme reasonably can be inferred")."While knowledge of the fraud or intent to defraud on the part of the defendant may be averred generally, Rule 9(b) also requires such allegations of 'scienter' to be supported by facts giving rise to a strong inference that defendant knew the statements to be false and intended to defraud plaintiff."*Arons v. Lalime,* 3 F.Supp.2d 314, 325 (W.D.N.Y.1998) (citing *Quaknine v. MacFarlane,* 897 F.2d 75, 79-80 (2d Cir.1990); *Beck,* 820 F.2d at 50;*Finkel v. Stratton Corp.,* 754 F.Supp. 318, 328 (S.D.N.Y.1990), *aff'd in part and rev'd in part,*962 F.2d 169 (2d Cir.1992)). A plaintiff may satisfy pleading requirements with allegations "either that the defendants engaged in consciously fraudulent behavior, or that they had motive and a 'clear opportunity' to commit fraud."*Citadel Managmt., Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 155 (S.D.N.Y.2000) (quoting *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995))."Acts done inadvertently, mistakenly, or in good faith without an intent to defraud" are insufficient to satisfy the knowledge and criminal intent elements of the mail and wire fraud statutes. *O'Malley,* 896 F.2d at 706;*see also Arons,* 3 F.Supp.2d at 325.

In addition, where more than one defendant is charged with fraud, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts."*USA Certified Merchants,* 262 F.Supp.2d at 332 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *Lakonia Mgmt. Ltd. v. Meriwether,* 106 F.Supp.2d 540, 550 (S.D.N.Y.2000); *Moeller v. Zaccaria,* 831 F.Supp. 1046, 1056 (S.D.N.Y.1993)).

W79 has not adequately pled mail and wire fraud as a predicate racketeering activity against any of Defendants. First, no use of the interstate mails has been alleged in the complaint with any specificity as to the circumstances of its use,[FN3] nor has W79 mentioned any purported use of the United States mails in its opposition papers in anything other than abstract terms, vitiating W79's claim of mail fraud. Insofar as W79 argues in a footnote in its opposition papers that Defendants have violated the mail and wire fraud statutes by using the interstate mails and wire to evade paying taxes to the state and federal governments (*see* Pl. Opp. Mem. at 36 n. 13), the complaint contains no allegations as to how interstate mails and wire were used by Defendants to accomplish this goal or which Defendants are alleged to have acted in such a manner, and the claim thus fails under Rule 9(b), Fed.R.Civ.P.

> FN3. The complaint merely asserts in a conclusory manner that Defendants made use of the mails and gives no indication as to when the mails were used, what materials were sent, or to whom. (*See, e .g.,* Compl. at ¶ 9 ("The Board Defendants work in conjunction with the other named Defendants to accomplish their racketeering scheme by actively *employing the use of the interstate mail* and wires through which Defendants advertise and rent Babad's units ....") (emphasis supplied), ¶ 104 ("Defendants have collectively engaged in and conspired to engage in a pattern of racketeering activity affecting interstate commerce by *using the mail* and wires with intent to distribute the proceeds of their unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, and/or carrying on, of their unlawful activity ....") (emphasis supplied).

*8 Second, although the Signature Defendants and the Metro-Home Defendants are alleged to have "facilitate[d] the advertising and booking of Babad's apartments through the use of the worldwide web" (Compl. at ¶ 82), the Complaint contains no allegations that the Board Defendants themselves employed the World-Wide Web, and, accordingly, fails to set forth with requisite particularly the purportedly fraudulent conduct attributable to each Defendant and the two predicate acts attrib-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 8
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

utable to each Defendant.

Moreover, although W79 alleges that Defendants have operated an "illegal hotel which is advertised and booked on the world wide web" (Compl. at ¶ 105), it is not clear in what manner this alleged operation constitutes a scheme to defraud or whom it is intended to defraud. Specifically, there are no allegations in the complaint that those who have booked the accommodations allegedly advertised by the Signature Defendants and the Metro-Home Defendants received something other than what was advertised. Although the advertisements at issue occasionally refer to the accommodations offered as an "alternative hotel" (as well as referring to them as "suites" and "apartments"), the inclusion of the modifier "alternative" signals that the property at issue is something other than a standard hotel, thus muting any argument that the accommodations were fraudulently advertised as hotel rooms. Even if the representation that the accommodations were an "alternative hotel" were deemed fraudulent, the complaint is devoid of any factual allegations establishing Defendants' individualized fraudulent intent.

In light of the foregoing, W79's pleading fails to satisfy the requirements of Fed.R.Civ.P. 9(b) and the general prerequisites for pleading a predicate act of mail and wire fraud, as it does not set forth the circumstances constituting fraud with particularity, identify the fraud alleged to be attributable to each Defendant, or allege facts giving rise to a strong inference that each Defendant knew any purportedly fraudulent statements to be false and intended to defraud or acted with reckless indifference to the truth.[FN4]

> FN4. Insofar as W79 relies on an affidavit submitted in opposition to the various motions to dismiss the complaint, such reliance is misplaced. On a motion to dismiss, only those documents attached to, incorporated by reference in, or relied upon by a complaint may be considered by the Court in assessing the complaint's sufficiency. See, e.g., *Citadel Mgmt., Inc. v. Telesis*

*Trust, Inc.*, 123 F.Supp.2d 133, 147 & n. 3 (S.D.N.Y.2000).

### 2. *Racketeering*

W79 has also alleged that Defendants' actions constituted racketeering under Section 1952 of Title 18, which sets forth penalties for:
Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to-
(1) distribute the proceeds of any unlawful activity; or ...
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform [an act described in paragraphs (1)-(3) ]....

18 U.S.C. § 1952(a). The phrase "unlawful activity" is defined as(1) any business enterprise involving gambling, liquor ..., narcotics or controlled substances ..., or prostitution offenses ..., (2) extortion, bribery, or arson ...., or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title....

*9 18 U.S.C. § 1952(b).

Of the activities enumerated in 18 U.S.C. § 1952(b), only Sections 1956 and 1957 of Title 18, the money laundering provisions, are mentioned in W79's complaint. Thus, the viability of W79's racketeering claim depends on the adequacy of its money laundering allegations which, as set forth below, are themselves deficient. Accordingly, W79 has failed to adequately allege racketeering as a predicate act, as it has not adequately pled an underlying "unlawful activity."

### 3. *Money Laundering*

Section 1957 of Title 18 prohibits the knowing engagement or attempt to engage in a monetary transaction in property "derived from specified unlawful activity" where the value of that property exceeds $10,000. 18 U.S.C. § 1957(a). The phrase

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 9
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

"specified unlawful activity" as employed by Section 1957 takes its meaning from Section 1956. See 18 U.S.C. § 1957(f)(3).

Section 1956 of Title 18 similarly prohibits any person or entity from conducting or attempting to conduct various financial transactions as well as from transferring or attempting to transfer monetary instruments or funds by parties with varying degrees of intent or states of knowledge. See 18 U.S.C. § 1956(a). Each of the prohibited acts set forth in Subsection (a) requires that the property at issue be or be believed to be proceeds derived from a "specified unlawful activity" or that the conduct at issue otherwise attempt to promote or conceal a "specified unlawful activity." Id. In short, in the absence of allegations concerning a "specified unlawful activity," no claim for money laundering may withstand a motion to dismiss.[FN5]

> FN5. W79 notes that 18 U.S.C. § 1956(a)(1) also refers to "some form of unlawful activity," and argues that a predicate act of money laundering is established by the mere showing that the proceeds in question derived either from a "specified unlawful activity" or from the more encompassing category of "some form of unlawful activity," which latter, W79 argues, includes Defendants' purported tax violations. The statutory language squarely contradicts W79's claim. The subsection in question provides that: "Whoever, *knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity,* conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... shall be sentenced...." 18 U.S.C. § 1956(a)(1) (emphasis supplied). The clause "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" is elsewhere defined as meaning that "the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7) [defining "specified unlawful activity"]." 18 U.S.C. § 1956(c)(1). Contrary to W79's contention, the more inclusive description of "some form of unlawful activity" is thus relevant only to the knowledge element of a money laundering violation under Subsection 1956(a)(1) and does not mitigate or alter the statutory requirement that the financial transaction at issue "in fact involve[ ] the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1).

The phrase "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to embrace a long list of prohibited conduct, including the various types of racketeering activity set forth in 18 U.S.C. § 1961(1), see 18 U.S.C. § 1956(c)(7)(A), as well as more than 70 other types of criminal conduct. See 18 U.S.C. §§ 1956(c)(7)(B)-(F). W79 argues that the "specified unlawful activity" underlying its money laundering claims is the same as the predicate racketeering activities alleged here, namely mail and wire fraud, money laundering and racketeering.

Because W79's allegations of mail and wire fraud are insufficient for the reasons set forth above, the "specified unlawful activity" required here may not be satisfied by reference to those allegations. Moreover, as W79 has not sufficiently pled a racketeering predicate act-for want of sufficient money laundering allegations-racketeering may not be said to constitute a "specified unlawful activity" with regard to the money laundering claim.

As for money laundering, although the statutory scheme set forth in 18 U.S.C. § 1956(c)(7) admits to an argument that a money laundering offense could constitute the "specified unlawful activity" required by the money laundering statutory provisions, such circular reasoning is unavailing under the circumstances presented here. It has been established by the Court of Appeals for this circuit that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 10
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

the underlying offense element of Sections 1956 and 1957 must be distinct from the money laundering allegation itself. *See,e.g.*,*United States v. Szur,* 289 F.3d 200, 213-14 (2d Cir.2002) (" 'It matters only that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering." ') (quoting *United States v. Mankarious,* 151 F.3d 694, 706 (7th Cir.1998)) (emphasis omitted); *United States v. McCarthy,* 271 F.3d 387, 395 (2d Cir.2001) ("Our case law consistently distinguishes between the crime that produces proceeds and the subsequent crime of laundering those proceeds, even though the transactions may flow together."). While it is conceivable that a specific and sufficiently pled money laundering offense could serve as a predicate "specified unlawful activity" for a second, separate instance of money laundering, W79's complaint offers no factual allegations suggesting that such a situation is present here.

*10 In the absence of adequate allegations as to the existence of a specified unlawful activity, W79 has failed to adequately plead money laundering as a predicate racketeering activity with regard to its civil RICO claim. *Seegenerally**Casio Computer Co. v. Sayo,* No. 98 Civ. 3772(WK), 2000 WL 1877516, at *16-17 (S.D.N.Y. Oct. 13, 2000) (observing that, while a plaintiff need not allege money laundering with great particularity where the money laundering is not premised on fraud, a plaintiff "must plead all elements of the offense" in order to adequately plead money laundering as a predicate act under RICO and withstand motions to dismiss) (citing *Bernstein v. Misk,* 948 F.Supp. 228, 236 n. 2 (E.D.N.Y.1997)).

4. *Tax Fraud and Violations of State Law*

W79's complaint is peppered with allegations that Defendants violated additional federal and state laws, including the claim that Defendants "avoided tax obligations under the Internal Revenue Code, New York State tax laws, and violated New York law, including but not limited to the Martin Act and other state and local laws prohibiting the illegal operation of a hotel as well as the Declaration and By-Laws and Certificate of Occupancy for the Cond-op ."(Compl. at ¶ 105.) Insofar as W79 may be relying on these allegations in a manner distinct from their role with regard to its mail and wire fraud claim, the complaint fails to identify any grounds upon which it could be concluded that the alleged violations constitute predicate racketeering activities under 18 U.S.C. § 1961(1).

B. *W79 Has Not Otherwise Adequately Pled a Section 1962(a) Claim*

The Court of Appeals for the Second Circuit has held that a violation of section 1962(a), consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering. Accordingly, under the plain terms of the statute ... for a violation of § 1962(a) [to occur], a plaintiff must allege injury "by reason of" defendants' investment of racketeering income in an enterprise.

*Ouaknine,* 897 F.2d at 82-83 (citations omitted)."[A] violation of this section is not established by showing participation in the alleged pattern of racketeering activity, or the derivation of income from that pattern, but is established instead by showing the use or investment of that income in acquiring, establishing or operating an enterprise."*Zaro Licensing,* 779 F.Supp. at 283;*seealso**Ouaknine,* 897 F.2d at 83 ("[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income.")."The 'by reason of' language in the context of a section 1962(a) violation requires that the alleged injury must have been caused by the investment of the racketeering proceeds."*Blue Cross & Blue Shield,* 113 F.Supp.2d at 383 (emphasis omitted) (collecting cases).

*11 To allege an investment injury under Section 1962(a), a plaintiff must plead two elements: "first, that the defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise, and second, that the plaintiff[ ] suffered an injury as a result of that investment by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 11
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

the defendants."*Allen v.. New World Coffee, Inc.,* No. 00 Civ. 2610(AGS), 2002 WL 432685, at *2 (S.D.N.Y. Mar. 19, 2002) (internal quotations omitted); *seealsoPyke v. Laughing,* No. 92 Civ. 555, 1998 WL 37599, at *2 (N.D.N.Y. Jan. 26, 1998)."Failure to satisfy this two part test will result in the dismissal of the plaintiffs' claims."*Protter v. Nathan's Famous Sys., Inc.* 925 F.Supp. 947, 954 (E.D.N.Y.1996) (citing *R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* 901 F.Supp. 630, 642 (S.D.N.Y.1995)).

Even assuming, *arguendo,* that W79 had adequately pled that Defendants derived income from a pattern of racketeering activity-which pattern of racketeering activity, as set forth above, W79 has failed to establish-W79 has not adequately alleged that it sustained an investment injury. Under Section 1962(a), the investment injury alleged must be distinct from any injury arising from the predicate racketeering acts themselves. *SeeDiscon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir.1996), vacated on other grounds, 525 U.S. 128 (1998); *Ouaknine,* 897 F.2d at 82-83;*USA Certified Merchants,* 262 F.Supp.2d at 331;*Blue Cross & Blue Shield,* 113 F.Supp.2d at 383-84.

Moreover, "the injury causation requirement of § 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in its general operations."*Katzman,* 167 F.R.D. at 657."As a matter of law, reinvestment of racketeering income is insufficient to make out a cause of action under RICO."*Allen,* 2002 WL 432685, at *4. This is so because, " '[w]here reinvestment of racketeering proceeds back from the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity." ' *Blue Cross & Blue Shield,* 113 F.Supp.2d at 384 (quoting *Falise v. American Tobacco Co.,* 94 F.Supp.2d 316, 349 (E.D.N.Y.2000)); *see,e.g.,Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir.1993) ( "[W]e have recognized repeatedly that ... the use and investment of racketeering income [to] keep[ ] the defendant alive so that it may continue to injure plaintiff ... is insuffi-

cient to meet the injury requirement of section 1962(a)."); *Soberman v. Groff Studios Corp.,* No. 99 Civ. 1005(DLC), 1999 WL 349989, at *5 (S.D.N.Y. June 1, 1999) (observing that "allegations that money was used or invested to further the same scheme are insufficient [to state a claim under section 1962(a) ], since they do not allege a distinct [investment] injury"); *Kaczmarek v. IBM Corp.,* 30 F.Supp.2d 626, 628 (S.D.N.Y.1998) ("Mere reinvestment of racketeering income into the same racketeering enterprise that generated the income 'does not satisfy the Second Circuit's holding in *Ouaknine'* because 'investment of the proceeds from the pattern of racketeering for general operations is too attenuated a causal connection to satisfy section 1962(a) and 1964(c).' Under these circumstances, the real cause of the injury remains the racketeering acts, not the investment of the proceeds in the enterprise."); *accordUSA Certified Merchants,* 262 F.Supp.2d at 331;*Protter,* 925 F.Supp. at 954.

*12 W79's complaint alleges that "each Defendant and/or the Babad Enterprise [all Defendants take part] received income directly or indirectly from a pattern of racketeering activity, and used or invested, directly or indirectly, part of such income, or the proceeds of such income in KMC, Babad Management, Signature, Metro-Home, Hospitality and/or the Babad Enterprise, an enterprise which is engaged in operations which affect interstate commerce."(Compl. at ¶ 117.) As set forth above, allegations that income derived directly or indirectly from the purported racketeering activity was reinvested into the same enterprise allegedly responsible for that activity are insufficient as a matter of law to sustain a Section 1962(a) claim. *SeeKatzman,* 167 F.R.D. at 657 (holding that a failure to allege an investment injury bars a Section 1962(a) claim).

In an effort to avoid this conclusion, W79 suggests that Signature and Metro-Home provide rentals for corporate housing and hotel space in New York City other than those located at The Atrium and that, by reinvesting the "illicitly gained proceeds" obtained through their purported racketeering activ-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 12
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

ities into "those aspects" of their businesses engaged in "legitimate hotel operations," Signature and Metro-Home are investing their racketeering income in something other than the RICO enterprise. (Pl. Opp. Mem. at 40-41.) Similarly, W79 argues that proceeds from the purported racketeering are allocated to KMC and that these proceeds are not reinvested into the RICO activities.

As an initial matter, this argument is somewhat contradicted by allegations elsewhere in the complaint that "[m]onies misappropriated from the illegal hotel business through the predicate racketeering activities were used or invested by Defendants in order to further finance the unlawful venture" (Compl. at ¶ 106) and that Defendants have invested the purportedly illicit income "to acquire, establish and/or operate the Babad Enterprise."(*Id.* at ¶ 99). Even if that were not the case, however, W79's argument does not undermine the conclusion that an investment injury has not been sufficiently pled. If Signature and Metro-Home each had both "legitimate" and "illicit [ ]" operations as W79 suggests, W79 has pointed to no authority for the proposition that reinvestment in an entity that purportedly conducts both legitimate and racketeering activities will satisfy Section 1962(a)'s requirement that the investment injury stem from investment in a "separate, legitimate entity." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994) (explaining that the "enterprise" referred to in Section 1962(a), unlike the "enterprise" of Section 1962(c), is "not intended to be the vehicle through which a pattern of racketeering is undertaken, but a separate, legitimate entity purchased through monies raised through racketeering"). W79's allegations concerning KMC fail on a similar rationale.

*13 As W79 has not adequately alleged an investment injury, as required under Section 1962(a), it has failed to state a claim with regard to that Section. *SeeQuaknine*, 897 F.2d at 82-83 (affirming the trial court's dismissal under Rule 12(b)(6), Fed.R.Civ.P., of a claimed violation of Section 1962(a) where the plaintiff had not alleged injury from the defendants' investment of racketeering income, as "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income").

### C. *W79 Has Not Otherwise Adequately Pled a Section 1962(c) Claim*

Even had W79 adequately pled predicate acts on the part of all Defendants, W79's claim under Section 1962(c) fails for two separate reasons.

First, Section 1962(c) imposes liability only upon defendants who operate or manage RICO enterprises. *SeeReves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("[S]ome part in directing the enterprise's affairs is required"). To satisfy Section 1962(c)'s requirement, a plaintiff must plead each defendant's participation in the "operation or management" of an enterprise.*Dietrich v. Bauer*, 76 F.Supp.2d 312, 347 (S.D.N.Y.1999) (quoting *Reves*, 507 U.S. at 183);*Jordan (Bermuda)*, 154 F.Supp.2d at 693. As the Second Circuit has explained,
One is liable under RICO if he or she has "discretionary authority in carrying out the instructions of the [conspiracy's] principals,"*United States v. Diaz*, 176 F.3d 52, 93 (2d Cir.1999), or "played some part in directing the affairs" of the RICO enterprise, *DeFalco v. Bernas*, 244 F.3d 286, 311 (2d Cir.2001); *seealsoUnited States v. Miller*, 116 F.3d 641, 673 (2d Cir.1997); *Napoli v. United States*, 45 F.3d 680, 681-83 (2d Cir.1995).

*Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir.2003)."RICO liability may not be imposed on a defendant who merely carries on its own professional activities."*Dietrich*, 76 F.Supp.2d at 347.

W79 argues that it need not show that each Defendant controlled the other in the operation of the purported enterprise, but need only demonstrate that each Defendant exerted "some degree of control over the enterprise itself, not the people associated with it ... as '[a]n enterprise is operated not just by upper management but also by lower-run participants in the enterprise who are under the direction of upper management." ' *Am. Arbitration Ass'n, Inc. v. DeFonseca*, No. 93 Civ. 2424(CSH), 1996 WL 363128, at *5 (S.D.N.Y. June 28, 1996)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 13
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

(quoting *Reves, 507 U.S. at 184*) (internal quotation marks omitted). In other words, according to W79, the complaint "must only state that [Defendants] were in charge of certain aspects of the enterprise." *DeFonseca, 1996 WL 363128, at \*5.*

There is a meaningful difference "between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient ... because the test is not involvement but control."*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 924 F.Supp. 449, 466 (S.D.N.Y.1996).* The Signature Defendants and the Metro-Home Defendants argue that their alleged involvement in the purported enterprise was minimal and does not rise to the level of control necessary for W79 to sustain a Section 1962(c) claim. The Signature Defendants argue that the only involvement they are alleged to have had with the purported enterprise is that they marketed and leased apartments in The Atrium via the internet and used an apartment in The Atrium. Similarly, the Metro-Home Defendants point out that the complaint's only factual allegations with regard to their involvement in the supposed enterprise consist of the claim that Metro-Home engaged in the business of renting and subletting apartments located in The Atrium and other buildings.

*14 Merely rendering services to an alleged enterprise does not establish that a person or entity controls the enterprise for purposes of Section 1962(c).*See,e.g.,Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir.1994)* (declining to hold an attorney liable where the plaintiffs had failed to produce anything to contradict the attorney's assertion that he was merely acting as an attorney and "had no role in the conception, creation, or execution of the purported flip/assignment" at the heart of the alleged RICO violation), *abrogation on other grounds recognized by Ellison v. Am. Image Motor Co., 36 F.Supp.2d 628, 636 (S.D.N.Y.1999); Casio Computer, 2000 WL 1877516, at \*21* ("Thus, '[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.' ") (quoting *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F.Supp. 1071, 1090 (S.D.N.Y.1996))* (internal quotation marks and citation omitted and alteration in original); *Hayden v. Paul, Weiss, Rifkind Wharton & Garrison, 955 F.Supp. 248, 254 (S.D.N.Y.1997)* (declining to hold an accountant liable under Section 1962(c), as "it is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO") (collecting cases). In other words, the "simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is 'insufficient' to bring a defendant within the scope of § 1962(c)." *United States v. Viola, 35 F.3d 37, 40-41 (2d Cir.1994), recognized as abrogated on other grounds,United States v. Zichettello, 208 F.3d 72, 99 n. 13 (2d Cir.2000); accordUnited States v. Diaz, 176 F.3d 52, 92 (2d Cir.1999); butcf.United States v. Allen, 155 F.3d 35, 42 (2d Cir.1998)* (noting that the decisions of the Court of Appeals for the Second Circuit have not always consistently followed the principle set forth in *Viola* ).

W79's complaint contains no factual allegations concerning the degree of discretionary authority exercised by the Signature Defendants or the Metro-Home Defendants and no allegations establishing the degree of control either group of Defendants exercised over the purported enterprise. That Alon and Blake may exercise control over Signature and Coughlin exercise similar control over Metro-Home does not establish that Alon, Blake or Coughlin, much less Signature or Metro-Home, exercised control over the supposed enterprise, nor is the conclusory allegation that Alon, Blake and Coughlin controlled or participated directly in the enterprise alleged (*see* Compl. at ¶ 116) sufficient without any attending factual allegations offered to support the claim. Likewise, allegations that the Signature Defendants and the Metro-Home Defendants performed tasks that, it will be assumed for the sake of argument, were both necessary and helpful to the alleged enterprise are not sufficient, by themselves, to bring these Defendants within the scope of Section 1962(c). In short, W79's complaint fails to allege how the Signature Defendants and the Metro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Home Defendants enjoyed discretionary authority or otherwise controlled the purported enterprise in any manner that might distinguish them from an outside provider of professional services working at the behest of a client. Absent such an allegation, W79's Section 1962(c) claim against those Defendants fails.

*15 W79's Section 1962(c) claim also fails as to all Defendants insofar as the complaint does not adequately allege that Defendants' purported predicate activity was the cause of W79's alleged injury.

To state a civil RICO claim under Section 1962(c), the plaintiff must allege injury resulting from "defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."*Azrielli, 21 F.3d at 520* (internal quotation marks omitted); *seealsoCofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir.1999)*. The RICO statute "limits standing to plaintiffs whose injuries were both factually and proximately caused by the RICO violation."*In re Am. Express Co. Shareholder Litig., 39 F.3d 395, 399 (2d Cir.1994)*; *seealsoIdeal Steel Supply, 373 F.3d at 257* ("The requirement in § 1964(c) that a civil RICO plaintiff show that it was injured in its business or property 'by reason of' the defendant's RICO violation means that the plaintiff must plead and prove that the violation not only was the logical, or 'but for,' cause of the injury but also was its legally cognizable, or proximate, cause."). As the Court of Appeals for the Second Circuit has recently explained, The requirement that a defendant's actions be the proximate cause of a plaintiff's harm represents a policy choice premised on recognition of the impracticality of asserting liability based on the almost infinite expanse of actions that are in some sense causally related to an injury.

*Ideal Steel Supply, 373 F.3d at 257* (citing *Sperber v. Boesky, 849 F.2d 60, 63-65 (2d Cir.1988)* (concluding that the plaintiffs' injuries were not proximately caused by the defendant's insider trading, as the plaintiffs were "neither the target of the racketeering enterprise nor the competitors nor the customers of the racketeer")); *seealsoVicon Fiber Optics Corp. v. Scrivo, 201 F.Supp.2d 216, 219 (S.D.N.Y.2000)* ("A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act.").

Even if W79 had adequately alleged a pattern of racketeering activity by Defendants, W79 has not set forth how the various injuries it has alleged are the logical and proximate result of Defendants' conduct. W79 has alleged that the purported hotel operated by Defendants "damages the interests of W79 as owner of the Commercial Unit" (Compl. at ¶ 86) because, as a result of the purported hotel operation, there is "increased wear and tear, thus causing the Defendants to charge higher maintenance fees, [passed on to] W79 in the form of common charges" (*id.* at ¶ 87), and to pass on expenses such as maid service and towel service to W79. (*Seeid.* at ¶ 88). These alleged injuries are too remote to constitute injuries directly resulting from any alleged racketeering activity.

W79 further alleges that it has been "forced to incur the expense of over $1 Million in infrastructure improvements and repairs, which ... inure to the benefit of all Defendants" (*id.* at ¶ 90), and that the value of The Atrium has been diminished due to the purported hotel operation. (*Seeid.* at ¶ 91). Both of these claims are similarly wanting, as they fail to establish that Defendants' activities are both the "but for" cause and the proximate cause of W79's injuries. Indeed, although W79 alleges that it has been "forced" to incur certain expenses, the complaint does not set forth how or under what circumstances W79 was forced to incur such expenses which, according to the complaint, were distinct from the common charges assessed. (*Seeid.* at ¶ 145.) Moreover, the complaint alleges predicate racketeering activity relating to the purported hotel operation from "at least September 2003" (*id.* at ¶ 107) and does not specify when the expense of $1 million was incurred, raising doubt as to the causation of that expense, doubt underscored by the Board Defendants' unrefuted assertion in their moving papers that the expense at issue was incurred in 1997.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 15
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

*16 Finally, W79 alleges that it has been injured by the purported hotel operation "in that the Babad Enterprise uses W79's apartment to run its hotel housekeeping service, thereby interfering with W79's property rights and depriving W79 of its rental income."(*Id.* at ¶ 89.) W79 elsewhere alleges that it has been injured with regard to the apartment in question "[a]s a direct and proximate result" of Defendants' trespass (*id.* at ¶ 153), casting doubt on any claim that its injury is directly and proximately caused by any predicate racketeering activity.

In sum, the facts alleged in the complaint fail to set forth that Defendants' predicate activity was the cause of W79's alleged injury, and W79's Section 1962(c) allegations thus fail to state a claim.

D. *W79 Has Not Adequately Pled a Section 1962(d) Claim*

Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Sections 1962(a), 1962(b) and 1962(c). As one court has explained,
In order to establish a violation of § 1962(d), the Supreme Court has held that a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense ... [.]" In other words, a RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met.

*Citadel Mgmt.,* 123 F.Supp.2d at 156 (quoting *Salinas v. United States,* 522 U.S. 52, 65 (1997)); *see also Jordan (Bermuda),* 154 F.Supp.2d at 695 ("To withstand a motion to dismiss, a RICO conspiracy allegation must 'display [ ] the continuity necessary to support a substantive RICO violation,' or an agreement to perform other predicate acts that, if carried out, would have established the requisite 'pattern of racketeering activity.' ") (quoting *Cofacredit,* 187 F.3d at 245);*Falise,* 94 F.Supp.2d at 353 ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

W79's "failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a) ... or 1962(c) necessarily dooms any claim [it] might assert arising under § 1962(d)."*Katzman,* 167 F.R.D. at 658;*see also Dietrich,* 76 F.Supp.2d at 349-50 (dismissing a claim under § 1962(d) because the amended complaint failed to adequately plead substantive violations of other RICO subsections).

E. *Leave to Replead Is Denied*

W79's complaint fails to set forth a RICO claim upon which relief can be granted. W79 has requested, in the event that its RICO claim is found wanting, leave to replead. (*See* Pl. Opp. Mem. at 53.)

In general, leave to replead should be "freely given when justice so requires."Fed.R.Civ.P. 15(a); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). Notwithstanding this liberal practice, leave to replead may be denied if repleading would be futile. *See Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir.2002) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.") (internal quotation marks omitted); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (*per curiam* )."An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."*Lucente,* 310 F.3d at 258 (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002)).

*17 Permitting W79 to replead its RICO claim is unlikely to be productive, as this claim suffers from substantive and not mere technical deficiencies for the multiple reasons set forth above and W79 has offered no indication that it could replead its RICO claim in a manner adequate to correct these deficiencies. Accordingly, W79's RICO claim is dismissed with prejudice.

II. *Supplemental Jurisdiction*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 16
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
(Cite as: Not Reported in F.Supp.2d)

As Defendants' motions to dismiss are being granted with respect to the sole claim in W79's complaint over which this Court had original jurisdiction, it must be determined whether a continued exercise of supplemental jurisdiction over W79's remaining state-law claims is appropriate.

The fact that the remaining claims in this action arise under state law does not require automatic dismissal for lack of subject matter jurisdiction. To the contrary, " 'the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, [although] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." ' *Parker v. Della Rocco,* 252 F.3d 663, 666 (2d Cir.2001) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). The statutory authority for the exercise of such supplemental jurisdiction is found in 28 U.S.C. § 1367(c)(3), according to which a district court "may decline to exercise supplemental jurisdiction over a claim ... if ... [it] has dismissed all claims over which it has original jurisdiction," as is the case here. 28 U.S.C. § 1367(c)(3).

Nonetheless, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well ." *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) (citing *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664-65 (2d Cir.1988)); *seealsoCarnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well ."); *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.,* 251 F.Supp.2d 1215, 1222 (S.D.N.Y.2002) (declining to exercise supplemental jurisdiction and noting that "[t]his is the preferred course when all federal claims have been dismissed pre-trial," particularly where "difficult issues of state law more appropriately addressed to the state courts" are at stake); *Louis v. St. Luke's Roosevelt Hosp. Ctr.,* No. 01 Civ. 11400(RWS), 2002 WL 1684175, at *3 (S.D.N.Y. July 24, 2002) (noting the "well-established rule of dismissing pendant state and municipal claims where the federal claim providing jurisdiction has been dismissed").

*18 As there is no longer any claim brought under federal law in this action and with due consideration of concerns of judicial economy, convenience and fairness, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over W79's remaining claims. *SeeGilmore v. Amityville Union Free School Dist.,* 305 F.Supp.2d 271, 279 (E.D.N.Y.2004) (declining to exercise supplemental jurisdiction where federal claims had been dismissed); *seealsoBlock v. First Blood Assocs.,* 988 F .2d 344, 351 (2d Cir.1993) (concluding that, even though "courts adjudicating cases similar to plaintiffs' have declined to dismiss pendent claims after the federal claims were dismissed," the district court did not abuse its discretion by "refusing to exercise pendent jurisdiction over plaintiffs' state law claims when their federal claims were dismissed before trial"). Accordingly, W79's remaining claims are dismissed without prejudice, and the Court need not reach the Metro-Home Defendants' argument for dismissal of W79's trespass claim against them.

*Conclusion*

For the reasons stated above, W79's claim for civil RICO violations is dismissed with prejudice, the remaining claims are dismissed without prejudice, and this case is closed.

It is so ordered.

S.D.N.Y.,2004.
West 79th Street Corp. v. Congregation Kahl Minchas Chinuch
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 17
Not Reported in F.Supp.2d, 2004 WL 2187069 (S.D.N.Y.), RICO Bus.Disp.Guide 10,765
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.