# TAB B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

McDonald v. Board of Educ. of City of New York
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Doretha MCDONALD, Plaintiff,
v.
BOARD OF EDUCATION OF THE CITY OF
NEW YORK, Harold Levy, as successor Chancel-
lor to Rudolph Crew, Askia Davis, as former Ad-
ministrator for District 5, Defendants.
**No. 01 CIV 1991 NRB.**

July 25, 2001.

MEMORANDUM AND ORDER
BUCHWALD, District J.
*1 Plaintiff Doretha McDonald ("McDonald" or
"plaintiff") brings this action against defendants
Board of Education ("the Board"), Chancellor Har-
old Levy, and District Five Administrator Askia
Davis (collectively "defendants") under 28 U.S.C. §
1331 and 28 U.S.C. 1343(a)(1), (2) and (3).
Plaintiff seeks monetary and injunctive relief under
42 U.S.C. § 1983 and 42 U.S.C. § 1985 for viola-
tions of her constitutional rights under the First,
Fifth and Fourteenth Amendments. Defendants
have moved pursuant to Fed. R. Civ. P 12(b)(6) to
dismiss the Amended Complaint for failure to state
a claim on which relief may be granted. For the
reasons discussed below, defendants' motion is
granted in part and denied in part.

BACKGROUND

Plaintiff has worked for the Board since 1984 in
District Five of the County of New York, City of
New York.[FN1] She asserts that she began her ser-
vice as a "para professional," but later became a
"full fledged teacher" upon meeting the qualifica-
tions for tenure. However, plaintiff does not plead:
(a) when she was appointed to a probationary term
by the Board, (b) the length of her probationary ser-
vice, (c) when the Board erroneously denied her
tenure, or (d) when she became tenured by estop-
pel.

FN1. Unless otherwise indicated, all facts
are drawn from the Complaint and its ex-
hibits.

Plaintiff ran for Union Representative for District
Five and was elected to the position on May 20,
1999. The following day, May 21, 1999, plaintiff
received a letter from Harriet Fortson, Principal of
Community School 30. The letter was dated May
18, 1999, two days prior to the election. It stated in
relevant part:
After a thorough review of your performance as a
teacher, including a review of the 1998-99 school
year observations and information in your file, I
have decided to give you an unsatisfactory annual
rating and to recommend to the District Adminis-
trator a discontinuance of your probationary ser-
vice.

Amended Complaint at Ex. A. One week later, on
May 28, 1999, plaintiff received two letters from
Askia Davis, District Five Administrator. The first
stated:This is to inform you that in accordance with
Section 2573 Subdivision 1 of the State Education
Law, I am denying your Certification of Comple-
tion of Probation in Community School District # 5.
Under the Collective Bargaining Agreement
between the Board of Education and the United
Federation of Teachers, you are entitled to the re-
view procedures as prescribed in Article 5, Section
5.3.4C of the Bylaws of the Board of Education.
Please be advised that your service under this ap-
pointment shall terminate as of the close of busi-
ness July 28, 1999....

Amended Complaint at Ex. B. The second letter in-
formed plaintiff:As a follow-up to consulting with
the Office of Special Investigations regarding pur-
suit of an investigation of alleged corporal punish-
ment by you, you are hereby directed to report to
the District Office effective Tuesday, June 2, 1999.
From this point until further notice, as the investig-
ation proceeds, you are directed to avoid commu-
nication in any manner with the students of your
class and their families.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

**\*2** Amended Complaint at Ex. C. Plaintiff does not allege that she ever requested the Article 5, Section 5.3.4C hearing pursuant to the first letter or demanded a hearing concerning the corporal punishment investigation pursuant to the second.

On June 18, 1999, Robert J. Reich ("Reich"), Director of the Office of Appeals and Review, sent a Memorandum to Askia Davis stating that the Office of Special Investigations concluded that plaintiff had committed corporal punishment. Mr. Reich directed that "[i]n light of the seriousness of [plaintiff's] actions she should be terminated."Amended Complaint at Ex. E. Furthermore, by letter dated the previous day, June 17, 1999, Reich informed plaintiff that she had been placed on the New York City Board of Education's Ineligible/Inquiry List. Plaintiff specifically alleges that her placement on the Ineligible/Inquiry List had "the effect of... deny[ing] her the opportunity to be employed anywhere in the Board of Education."Amended Complaint at ¶ 25. In that letter, Reich invited plaintiff to schedule an informal conference with the Office of Appeals if she wished to discuss the action. However, plaintiff does not allege that she did so. She also chose not to commence an Article 78 proceeding to challenge the Board's actions. Moreover, at no point during these termination proceedings does plaintiff allege she ever asserted that she was tenured or was being afforded insufficient process.

The United Federation of Teachers, AFL-CIO ("the Union"),[FN2] commenced a grievance proceeding against the Board alleging that plaintiff had been terminated illegally on account of her union activities. Plaintiff filed her initial Complaint over a year and a half after her termination, on March 8, 2001, requesting an order to show cause why this Court should not, *inter alia,* enjoin the Union proceeding. We held a hearing on March 9, 2001, at which we denied plaintiff's order to show cause to enjoin the Union proceeding and granted defendants permission to file a motion to dismiss, pending plaintiff's amendment of her Complaint. Plaintiff filed her Amended Complaint on March 16, 2001, and defendants now move to dismiss.

FN2. The Union was initially a named defendant in the action. Plaintiff alleged that it breached its duty-of-fair-representation to her and conspired with the Board to deprive her of her civil rights. However, on plaintiff's stipulation and pursuant to Fed.R.Civ.P. 41, the Court dismissed the claims against it with prejudice on May 22, 2001.

STANDARD OF REVIEW

Defendants move to dismiss plaintiff's claims, pursuant to Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true all material factual allegations in the Amended Complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Still v. De-Buono,* 101 f.3d 888, 891 (2d Cir.1996); *see Conley v. Gibson,* 355 U.S. 41, 48 (1957)."General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint."*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995) (*citing Jenkins v. S & A Chaissan & Sons, Inc.,* 449 F .Supp. 216, 227 (S.D.N.Y.1978); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363, at 464-65 (2d ed.1990). In addition to the facts set forth in the Amended Complaint, we may also consider documents attached thereto and incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 67 (2d Cir.1998), matters of public record such as case law and statutes, *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998), and matters of judicial notice. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991).

DISCUSSION

**\*3** Plaintiff essentially states three causes of action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

under 42 U.S.C. § 1983:(1) defendants deprived plaintiff of her property interest in her continued employment, in violation of her Fifth and Fourteenth Amendment due process rights, by terminating her as a probationary employee when she was rightfully tenured; (2) defendants deprived plaintiff of her liberty interest in seeking other employment, in violation of her Fifth and Fourteenth Amendment due process rights, by firing her for committing corporal punishment without first conducting an adequate hearing; and (3) defendants violated plaintiff's First Amendment free speech rights by terminating her in retaliation for her union activities. Plaintiff also alleges that the Union and Board entered into an agreement to deprive her of her civil rights in violation of 42 U.S.C. § 1985. We discuss each allegation in turn.

### I. Claim for Deprivation of Plaintiff's Property Interest Without Due Process

Plaintiff first claims that the Board deprived her of her property interest in continued employment without due process of law. The heart of her claim is that Board mistakenly treated her as a probationary teacher when she was actually tenured. As a result, plaintiff alleges, her probationary termination failed to provide the minimum procedural protections to which she was entitled under the Constitution.

The proper analysis for a teacher's claim that she was deprived of a property or liberty interest in her job without due process is well-settled.
The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review. See *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*Narumanchi v. Board of Trustees of the Connecticut State University*, 850 F.2d 70, 72 (2d Cir.1988). The Supreme Court has held that a tenured State teacher may have a constitutionally protected property interest in her continued employment. See *Perry v. Sindermann*, 408 U.S. 593 (1972); *Buck v. Board of Ed. of City of New York*, F.2d 315, 318 (2d Cir.1977). As a general rule, when someone is deprived of a protected property interest through "established state procedures," they are entitled to pre-deprivation notice and a hearing. See *Hellenic American Neighborhood Action Committee v. City of New York (HANAC)*, 101 F.3d 877, 880 (1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)).

Plaintiff contends that her case is straightforward. She alleges that she was tenured and thus her termination as a probationary employee, pursuant to "established state procedures" and without a hearing,[FN3] deprived her of due process.

> FN3. Specifically, plaintiff alleges that as a tenured teacher, she was entitled to a hearing pursuant to 3020-a of the New York Education Law.

*4 We see the issue differently. Even assuming that we should consider plaintiff tenured for the purposes of this motion,[FN4] the question is not whether a tenured teacher has a due process right to a hearing prior to being terminated, it is whether a state is constitutionally obliged to hold a hearing to determine a teacher's tenure status prior to commencing termination proceedings against her, *even when that teacher failed to inform that State that she believed was entitled to tenure treatment.*

> FN4. We find this a very dubious assumption given that plaintiff has alleged neither that she received tenure nor specific facts that, if proven, would support her conclusion that she had a legal right to tenure.

Plaintiff was on notice from the very beginning of the termination proceedings that defendants con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sidered her probationary, yet nowhere does she allege that she claimed tenure status. Defendants' first letter concerning plaintiff's termination plainly notified her that she was considered a probationary employee. It read, in relevant part, "I have decided to give you're an unsatisfactory annual rating and to recommend to the District Administrator a discontinuance of *your probationary service*." (emphasis added). The follow-up letter reiterated plaintiff's status: "I am denying your *Certification of Completion of Probation* in Community School District # 5" (emphasis added). However, nowhere does the Amended Complaint allege that plaintiff contested her probationary classification.

Under these facts, plaintiff's due process claim must be based on a theory that the Board was under some independent obligation to hold a hearing to determine her tenure status, notwithstanding its belief that she was probationary. Any narrower theory would exclude her because she failed to bring her status dispute to the Board's attention. The viability of this position can only be assessed in light of broader due process doctrine.

Every due process inquiry must begin with the recognition that "[due process] guarantees no particular form of procedure; it protects substantial rights." *National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 351 (1938).* Determining what process is constitutionally required to protect those rights is necessarily an *ad hoc* inquiry. "[T]he strictures which the [Due Process] Clause imposes must be tailored to fit each particular situation. See *Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)*... [and the] imperatives of due process is necessarily a sui generis exercise. *United States v. Moon, 718 F.2d 1210, 1234 (2d Cir.1983), cert. denied,466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984)."Neron v. Tierney, 841 F.2d 1197, 1201 (1st Cir.1988).*

The right to pre-deprivation notice and a hearing are not absolute. See *Hellenic American Neighborhood Action Committee v. City of New York (HANAC), 101 F.3d 877, 880 (2d Cir.1996); Burt-*

*nieks v. City of New York, 716 F.2d 982, 987 (2d Cir.1983)* (citing *Parratt, 451 U.S. at 537-38).* Indeed, as the Supreme Court explained in *Parratt,*"we have rejected the proposition that 'a meaningful time and in a meaningful manner'*always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available."*Parratt, 451 U.S. at 540-41;see Phillips v. Commissioner, 283 U.S. 589, 596-597 (1931)* (Brandeis, J.) ("Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate."). Thus, we must examine the full process made available to plaintiff-the impracticability of a predeprivation hearing and the availability of postdeprivation relief-to determine whether it adequately protected her alleged property interest.

*5 We first consider the practicability of requiring the pre-termination hearing plaintiff must contend was constitutionally required. As discussed earlier, context is critical to determining the process due and this case occurs in the context of State employment. The Supreme Court long has recognized that when States act as employers, they have a have a significant interest in managing their personnel. *See Connick v. Myers, 461 U.S. 138, 143 (1983)* ("government offices could not function if every employment decision became a constitutional matter"); *Pickering v. Board of Ed., 391 U.S. 563 (1968).* Although that interest does not automatically trump State employees' constitutional and tenure rights, *Connick* at 146-47, it weighs heavily in assessing the relative practicability of different procedures for protecting employees' rights.

Generally, New York is free to terminate probationary teachers without a hearing because they have no constitutionally protected property interest in their continued employment. See *Narumanchi, 850 F.2d at 72;Rivera v. Community School District Nine,*

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

No. 00 Civ. 8208(SHS), 2001 U.S. Dist. LEXIS 5497 at *8 (S.D.N.Y. May 2, 2001) ("Under New York law, ' 'it is well settled that a probationary employee, unlike a permanent employee, has no property rights in [her] position and may be lawfully discharged without a hearing and without any stated specific reason." *Finley v. Giacobbe,* 79 F.3d 1285 [*quoting Meyers v. City of New York, 208 A.D.2d 258, 262, 622 N.Y.S.2d 529, 532* (2d Dep't 1995) ]"). However, were we to adopt plaintiff's de facto theory, New York would have to hold a tenure-determination hearing prior to terminating any teacher it believed was probationary. This would place a substantial new burden on New York as an employer. Although requiring such a hearing might be reasonable if a plaintiff challenged her probationary status, it seems a needless imposition in cases, such as plaintiff's, where the teacher never protested her probationary classification. Furthermore, as teachers' tenure is not obviously different from any other public employees', New York would presumably be burdened with holding a tenure-status hearing prior to terminating any probationary worker in a theoretically tenurable position. It is difficult to see how the Constitution requires a precautionary measure this burdensome to protect against the rare occurrence of a tenured employee being terminated as probationary while failing to contest her status.

Against the burden of instituting a predeprivation hearing, we consider the adequacy and availability of postdeprivation relief. Article 78 of the New York Civil Practice Rules ("CPLR") provides plaintiff a wholly adequate post-deprivation remedy. In *HANAC,* the Second Circuit explained:
Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners. '[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of their claim], and where a triable issue of fact is raised, the petitioner may obtain a trial.' *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 202 (2d Cir.1996). Additionally, constitutional issues can be decided in Article 78 proceedings.

*Christ the King Reg. High Sch. v. Culvert,* 815 F.2d 219, 224-25 (2d Cir.1987).

*6 *HANAC,* 101 F.3d at 881. Indeed, the Second Circuit has specifically held that an Article 78 proceeding provides sufficient postdeprivation due process protection in numerous contexts where a predeprivation hearing was judged impracticable. *See, e.g., HANAC,* 101 F.3d at 881 ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."[*citing Hudson v. Palmer,* 468 U.S. at 535] );*Interboro Inst., Inc. v. Foley,* 985 F.2d 90 (2d Cir.1993); *Katz v. Klehammer,* 902 F.2d 204 (2d Cir.1990); *Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 103 (2d Cir.1988), *cert. denied,*488 U.S. 889 (1988); *Giglio v. Dunn,* 732, F.2d 1133 (2d Cir.1984), *cert. denied,*469 U.S. 932 (1984).

Plaintiff's underlying complaint is that defendants applied the wrong termination procedure-probationary instead of tenured. She clearly could have found relief for this purported error under either, or both, CPLR § 7803(1) ("whether the body or officer failed to perform a duty enjoined upon it by law"), or CPLR § 7803(3) ("whether a determination was made in violation of lawful procedure, was affected by an error of law...").*See Campo,* 843 F.2d at 101 ("If the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim involved."[citations omitted] ). Thus, Article 78 provided plaintiff a ready and adequate remedy.FN5

> FN5. The fact that Article 78's four-month statute of limitations may have run does not change the fact that it provided plaintiff an adequate postdeprivation remedy. "Where, as here, Article 78 gave... a meaningful opportunity to challenge [the termination procedure] ... [plaintiff] was not deprived of due process simply be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

cause [she] failed to avail [herself] of the opportunity."*Giglio*, 732 F.2d at 1135.

Considering the relative weight of plaintiff's interest, the prospective burden upon defendants of providing a predeprivation procedure that would have protected against the alleged deprivation of plaintiff's interest, and the availability of postdeprivation relief, we find that defendants did not violate plaintiff's due process rights. Where, as here, plaintiff was put on *plain notice* that she was going to be terminated pursuant to probationary procedures and thereafter failed to notify the Board that she believed these procedures were inappropriate, we hold that Constitution does not require the State to conduct a pre-termination hearing to determine the tenure status plaintiff failed to assert.

## II. Claim for Deprivation of Plaintiff's Liberty Interest Without Due Process

Plaintiff next asserts that her termination for corporal punishment deprived her of her liberty interest in seeking other employment. Specifically, she claims that defendants' placement of her name on the New York City Board of Education's Ineligible/Inquiry List has prevented her from getting another job with the Board.

Under certain circumstances, the "liberty" interest protected by the due process clause includes the right to contest at a hearing "stigmatizing" public governmental statements that impose a significant disability. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (due process violation when State published names of people forbidden to purchase alcohol because of history of "excessive drinking" where no notice or hearing was provided before posting). Because termination of employment for stigmatizing reasons can jeopardize an individual's ability to earn a living, courts have focused on stigmatizing statements in the context of terminations. *See Paul v. Davis*, 424 U.S. 693, 708-712 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Brandt v. Board of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir.1987).

*7 The doctrinal requirements are two-fold for stat-

ing a case that a State injured an employee's liberty interest by publicly stigmatizing her in conjunction with her termination. First, a plaintiff must prove that her employer published "stigmatizing" information which is arguably false.*O'Neill v. City of Auburn*, 23 F.3d 685, 693 (2d Cir.1994) ("A plaintiff who demands a name-clearing hearing must contest the truth of the allegedly stigmatizing statements because, as the Supreme Court has explained, the purpose of a name clearing hearing is to give the allegedly stigmatized employee an opportunity to refute the government's stigmatizing charges."). Second, a plaintiff must prove that as a result of that stigma, she has been foreclosed from a range of other employment opportunities. *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994). For the purposes of this motion, we assume, *arguendo,* that if plaintiff's termination for corporal punishment were published, it would subject her to "public opprobrium" that would jeopardize her liberty interest in seeking other employment. *Id.* (citing *Bohn v. County of Dakota,* 772 F.2d 1433, 1436 n. 4 (8th Cir.1985), *cert. denied,*475 U.S. 1014 (1986)).

Nevertheless, plaintiff's pleadings suffer from several defects that are individually and collectively fatal. First and foremost, nowhere in her Amended Complaint does plaintiff assert that defendants' statements were false, i.e. she does not dispute that she committed corporal punishment. As the Second Circuit made clear in *O'Neill,*"[i]f the truth of the statements is not contested, there is nothing to have a hearing about."*O'Neill,* 23 F.3d at 693 (*citing Codd v. Velger,* 429 U.S. 624 (1977)); *Brandt v. Board of Co-op. Educ. Servs.,* 820 F.2d 41, 43 (2d Cir.1987)). In the absence of any denial, plaintiff has not stated a claim. *See Verri v. Nanna,* 972 F.Supp. 773, 798 (S.D.N.Y.1997)

Second, plaintiff has failed to allege that defendants published the "stigmatizing" statements about her termination. As the Second Circuit explained in *Donato v. Plainview-Old Bethpage Cent. School Dist.,* 96 F.3d 623, 631 (2d Cir.1996), "[s]tigmatizing statements by the government about an employee upon her discharge only implicate a liberty interest when there is also public disclos-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ure."(citations omitted). In this case, plaintiff would need to assert that defendants published the fact that plaintiff has been found guilty of corporal punishment. However, she makes no such allegation. She simply alleges that her name was placed on the Board's Ineligible/Inquiry List as having been fired "for cause." Amended Complaint at ¶ 25, ¶ 47. Nowhere does she assert that the List disclosed the stigmatizing grounds for her dismissal or that inclusion on the List gives rise to a *per se* inference that plaintiff was terminated for a reason sufficiently "stigmatizing" to state a due process claim. Similarly, she does not allege that the grounds for her dismissal were otherwise published to potential employers. Thus, in failing to assert that defendants published a stigmatizing statement that interfered with her ability to obtain new employment, plaintiff fails to state an element of this claim. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 n. 13 (upholding dismissal of a liberty claim due to failure to allege publication) (*citing Bishop v. Wood,* 426 U.S. 341, 348 (1976)).

*\*8* Third, plaintiff does not allege that the alleged defamation has interfered or will interfere with her ability to seek *new* employment. She asserts only that her "place[ment] on the ineligible list of the Board of Education [had] the effect of... deny[ing] her the opportunity to be employed anywhere *in the Board of Education.*" (emphasis added). Amended Complaint at ¶ 25; *see also* Amended Complaint at ¶ 47.[FN6] If a State employer internally disseminates erroneous information concerning an employee's termination, thereby making it more difficult for that employee to seek re-employment with that employer, the employer has not deprived the employee of his protected liberty interest. Were the rule otherwise, States would have to hold a hearing prior to terminating any probationary employee "for cause."Furthermore, all such terminations would be subject to direct, substantive federal review. As the Supreme Court explained in *Bishop v. Wood,* 426 U.S. 341, 348 (1976), due process simply does not provide this degree of federal review.[FN7] Thus, for each of these three reasons, plaintiff has failed to state a claim for deprivation of her liberty interest without due process.

FN6. Plaintiff's *pro forma* inclusion of the term "and others," Amended Complaint at ¶ 47 (the Board "publish[ed] to all of the Community School Districts, and others, a demand that plaintiff not be hired in any of those independent Community School Districts stating that plaintiff was fired for cause..."), is not sufficient to cure her defective pleading regarding publication. She does not allege that the "others" were potential employers or that publication to these "others" interfered with her ability to obtain gainful employment from anyone other than the Board.

FN7. This is particularly true in liberty interest cases, like plaintiff's, where the Supreme Court has created an especially high "stigma plus" standard for stating a claim. *See, generally, Paul v. Davis,* 424 U.S. 693, 709-10 (1976); *Easton v. Sundram,* 947 F.2d 1011, 1016 (2d Cir.1991) (requiring "stigma plus"), *cert. denied,* 504 U.S. 911 (1992).

### III. Claim for Retaliation for Plaintiff's Exercise of Her First Amendment Rights.

Plaintiff's third claim is that defendants violated her First Amendment rights by terminating her in retaliation for her union activities. Although her theory is opaque and appears dubious, she has pled facts that could conceivably state a claim and, accordingly, defendant's motion to dismiss is denied.

It is difficult to discern the contours of plaintiff's claim because she failed to plead it explicitly in her Amended Complaint. Furthermore, when she first articulated the claim in her opposition papers to defendants' motion to dismiss, she presented it under an incorrect theory. However, on a motion to dismiss, we recognize that a plaintiff need only plead facts showing entitlement to relief, *see Herzog & Straus v. GRT Corp.,* 553 F.2d 789, 791 n. 2 (2d Cir.1977), and is not required to specify the legal theory upon which the claim is based. *See Albert v. Carovano,* 851 F.2d 561, 571 n. 3 (2d Cir.1988).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 8
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

In her opposition papers, plaintiff argued that she was fired on account of union activities in violation of her First Amendment right to free speech. However, plaintiff does not allege any statements or other expressive conduct for which she was being retaliated. Therefore, we find no basis for plaintiff's claim that defendants violated her First Amendment free speech rights.

Nevertheless, it is well-settled that the First Amendment protects the rights of employees to associate in labor unions, *see Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464 (1979)*. A state employer may not retaliate against an individual because of her union activities, *id. at 465;Henderson v. Huecker, 744 F.2d 640, 644-45 (8th Cir.1984); Stellmaker v. DePetrillo, 710 F.Supp. 891 (D.Conn.1989)*, regardless of whether the employee has a property interest in her job. *See Sindermann, 408 U.S. at 597*. Furthermore, discrimination against public employees because of their union membership is actionable under § 1983. *See, e.g., Thomas v. Younglove, 545 F.2d 1171 (9th Cir.1976); Lontine v. VanCleave, 483 F.2d 966 (10th Cir.1973); Orr v. Thorpe, 427 F .2d 1129 (5th Cir.1970)* (§ 1983 provides remedy against state interference with constitutionally protected rights of teachers to free association); *McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir.1968)* (complaint alleging that a non-tenured teacher was dismissed solely because of his membership in a union stated a claim upon which relief can be granted under § 1983). Thus, to the extent that the Amended Complaint may be read as alleging that defendants terminated plaintiff in retaliation for her union membership or activities, she has stated a claim for violation of her First Amendment right to free association.

**\*9** The Amended Complaint does not make clear whether it alleges that defendants retaliated against plaintiff for her history of union activity, or simply for her election on May 20, 1999. If plaintiff only alleged retaliation for her election to Union District Representative, her claim would be in jeopardy because her initial notice of the termination proceedings against her was apparently sent on May 18,

1999-two days prior to her termination. However, because we can read paragraphs 14 and 15 of the Amended Complaint [FN8] to allege retaliation for her union activity over time, we do so. Accordingly, we find that plaintiff has stated a retaliation claim for violation of her First Amendment right to association and we deny defendants' motion to dismiss.

> FN8. Those paragraphs read as follows:
> "14. Prior to the last six months of the 1998-1999 school year the defendant Board of Education 'lettered' the plaintiff's file when heretofore it had been virtually unblemished. Most of those letters were determined to be unfounded and removed from plaintiff's file after they were grieved. 15. This letter of plaintiff's file was, on information and belief, at the direction of the defendant Askia Davis who singled out other individuals in the school for retaliatory treatment utilizing such means of retaliation as unjustified transfers and 'lettering' of files of individuals active in the defendant Union."

### IV. Conspiracy to Deprive Plaintiff of Her Civil Rights

Finally, plaintiff alleges that the Union and the Board "entered into an agreement to deprive her of her civil rights" in violation of 42 U.S.C. § 1985 (" § 1985"). However, because plaintiff failed to oppose defendants' motion to dismiss this claim, we presume she has abandoned it. Therefore, it is dismissed.

Even if plaintiff had opposed dismissal, however, the claim would not survive because plaintiff failed to assert that racial animus motivated the conspiracy. To state a claim under § 1985, plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

either injured in his person or property or deprived of any right or privilege of a citizen of the United States."*United Bhd. of Carpenters and Joiners v. Scott,* 463 U.S. 825, 828-29, (1983); *see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087-88 (2d Cir.1993). Moreover, "[t]o recover under section 1985(3), a plaintiff must [also] allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." ' *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994) (*citing Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971) and *Jews for Jesus, Inc. v. Jewish Community Relations Council,* 968 F.2d 286, 290-91 (2d Cir.1992)). Although plaintiff, an African American, is a member of a protected class, nowhere does she allege that the acts taken in regard to her continued employment were motivated by racial animus. In this absence, plaintiff has failed to state a claim under § 1985.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted in part and denied in part. The parties are ordered to appear for a conference before the Court on August 23, 2001 at 4:15pm.

IT IS SO ORDERED.

S.D.N.Y.,2001.
McDonald v. Board of Educ. of City of New York
Not Reported in F.Supp.2d, 2001 WL 840254 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB C**

LEXSEE 2007 US DIST LEXIS 66920

**SALLY LYDDY, ET AL. v. CIVIL BRIDGEPORT BOARD OF EDUCATION, ET AL.**

**NO. 3:06CV1420(AHN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2007 U.S. Dist. LEXIS 66920*

**This September 11, 2007, Decided
September 11, 2007, Filed**

**COUNSEL:** [*1] For Sally Lyddy, Maria Marcoccia, Plaintiffs: John W. L. Walshe, LEAD ATTORNEY, Bridgeport, CT.

For Bridgeport Bd of Ed, City of Bridgeport, Defendants: Carolyn Roberts Linsey, LEAD ATTORNEY, Jeffers & Ireland, Fairfield, CT.

For Andrew Cimmino, Defendant: Matthew Scott Hirsch, LEAD ATTORNEY, Law Offices of Matthew S. Hirsch LLC, Trumbull, CT.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINION BY:** Alan H. Nevas

**OPINION**

*RULING ON PENDING MOTIONS*

The plaintiffs, Sally Lyddy ("Lyddy") and Maria Marcoccia ("Marcoccia"), bring this Title VII employment action against the City of Bridgeport ("City"), the Bridgeport Board of Education ("Board"), and Andrew Cimmino ("Cimmino"), the principal of Thomas Hooker School ("School"). Lyddy, a former teacher at the School, and Marcoccia, the School's former sexual harassment officer, both still work in the Bridgeport school system. They allege that when they worked at the School, they suffered sexual harassment and discrimination as a result of Cimmino's "sexual antics," which they say the Board condoned, permitted and refused to stop. In addition to their Title VII claims

against all defendants, Lyddy and Marcoccia also allege a "negligent and/or intentional" infliction [*2] of emotional distress against Cimmino, and an "attempted due process" claim against the City.

The City, the Board and Cimmino have moved to dismiss the complaint [docs. ## 26 & 28] and to strike numerous allegations [docs. ## 26 & 30]. Lyddy and Marcoccia have moved to disqualify counsel for the City [docs. ## 52 & 53]. For the following reasons, the motions to dismiss and strike are GRANTED in part and DENIED in part. The motions to disqualify counsel are DENIED.

*STANDARD*

The function of a *Rule 12(b)(6)* motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)*. When considering a motion to dismiss, the court must accept the facts alleged in the complaint as true, draw all reasonable inferences from those facts in the light most favorable to the plaintiff, and construe the complaint liberally. *Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)*. The district court may dismiss a claim only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible [*3] on its face." *Bell Atlantic Corp. v. Twombly,    U.S.   , 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007)*; [1] see also *Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)*. Although detailed factual allegations are not required, a plaintiff must provide the grounds of her entitlement to relief beyond mere "labels and conclusions." A "formulaic

2007 U.S. Dist. LEXIS 66920, *3

recitation of the elements of a cause of action will not do." *Bell Atlantic, 127 S. Ct. at 1964-65.* The complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and demonstrate a right to relief. *Id.* Conclusory allegations are not sufficient. Under the plausibility standard, a claim must be amplified "with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty, 490 F.3d at 157-58.*

> 1  In *Bell Atlantic*, the Supreme Court indicated that the accepted rule of *Conley v. Gibson,* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, had outworn its usefulness and that it was time [*4] to adopt a new and heightened pleading standard." *127 S. Ct. at 1968 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).* After *Bell Atlantic,* the Second Circuit questioned whether the Court intended the stricter standard for assessing the adequacy of pleadings announced in *Bell Atlantic* should apply generally or only in antitrust cases, and concluded that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible plausibility standard." *Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).*

*DISCUSSION*

The City and Cimmino move to dismiss Lyddy's and Marcoccia's Title VII claim. The City maintains that they do not allege that it is their employer and thus it cannot be liable under Title VII. Cimmino maintains that the Title VII claim against him must be dismissed because there is no individual liability under Title VII. Cimmino moves as well to dismiss the second count, in which Lyddy and Marcoccia allege a claim against him for negligent and/or intentional infliction of emotional distress. The City also moves to dismiss the third count, which alleges an attempted due process violation, on the grounds that the complaint does not [*5] allege what rights were abridged or the manner in which they were abridged. The Board joins in moving to dismiss this count to the extent it is brought against it. The City, the Board, and Cimmino move to dismiss the fourth count on the grounds that it does not articulate a legally cognizable cause of action.

The City, the Board, and Cimmino also move to strike numerous paragraphs of the complaint on the grounds that the allegations are immaterial, scandalous, and impertinent.

Lyddy and Marcoccia move to disqualify counsel for the City on the ground that counsel's simultaneous representation of the City and the Board presents an impermissible and insoluble conflict of interest.

*I. Title VII Claim Against the City & Cimmino*

The City maintains that the Title VII claim against it must be dismissed because Lyddy and Marcoccia do not, and cannot, allege that it was their employer. The City is correct.

Throughout the complaint, Lyddy and Marcoccia only allege that the Board was their employer. For example, in paragraph 4, the complaint alleges that "the Board is the employer of plaintiffs." In paragraph 9(a), it alleges that "the Board engaged in employment discrimination." Paragraph 10 alleges [*6] that "Lyddy has been employed by the Board since 1990 ... Marcoccia has been employed by the Board since approximately 1988." Paragraph 25 alleges that "[d]espite the complaints made by plaintiffs to the Board, ... the Board failed and refused to terminate" Cimmino's sexual harassment of them. And in paragraph 26, it says that Cimmino's sexual harassment, abuse, and discrimination was ratified and condoned by the Board and the Board's failure to terminate or restrain him rendered his conduct to be a policy of the Board. In contrast, the City is mentioned only in paragraph 5, which states that "the City ... is a municipal corporation with authority to review the Board's acts and actions." The complaint simply does not allege any involvement of or acts by City officials, as opposed to Board officials, in the alleged conduct forming the basis of the Title VII claim.

The existence of an employer-employee relationship is the touchstone of liability under Title VII. *Gulino v. New York State Educ. Dept., 460 F.3d 361, 370 (2d Cir. 2006).* It is well settled that under Title VII an employee may only sue her employer. *E.g., Nanton v. City of New York, No. 05civ8989(DLC), 2007 U.S. Dist. LEXIS 58874, 2007 WL 2319131 (S.D.N.Y. Aug. 10, 2007).* [*7] To discern the existence of an employment relationship, the court must start with traditional indications of

employment under the common law of agency. *Gulino, 460 F.3d at 379.* This involves an examination of whether the putative employer had any role in hiring, promoting, demoting, or compensating the employee and the extent to which it had control over the day-to-day activities of the employee. *Id. (citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989)).* There must be a relationship where the level of control is direct, obvious and concrete, not merely indirect or abstract. *Id.*

Here, not only do Lyddy and Marcoccia allege that the Board, not the City, is their employer, there is also nothing in the alleged facts from which the court could determine, based on traditional agency principles, that the City is their employer. [2] Moreover, such a finding would be contrary to Connecticut statutes which make it clear that local boards of education, not municipalities, are charged with maintaining public schools and implementing the state's educational interests. In fact, Connecticut statutes give local school boards the express authority to employ and dismiss the schools' teachers [*8] and staff. *Conn. Gen. Stat. § 10-220; Conn. Gen. Stat. § 10-241* ("Each school district shall be a body corporate and shall have the power to sue and be sued; ... and to employ teachers, ... and pay their salaries."); *Conn. Gen. Stat. § 10-151* (governing procedures by which local school boards promote, terminate, and compensate teachers).

> 2 Although Lyddy and Marcoccia assert in their opposition papers that under general agency principles the City can be deemed their employer because they are paid out of the City treasury, this factual assertion is not alleged in the complaint and thus cannot be considered by the court. *Henthorn v. Dep't of Navy, 308 U.S. App. D.C. 36, 29 F.3d 682, 688 (D.C. Cir. 1994)* (noting that factual allegations in briefs or memoranda of law may not be considered when deciding a *Rule 12(b)(6)* motion); *cf. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)* (noting that the facts alleged in the complaint control for the purpose of a motion to dismiss).

In the absence of any allegation that the City is the employer of Lyddy or Marcoccia, or any facts from which the court could determine that the City had any control over the terms and conditions of their employment or day-to-day activities, and [*9] in light of the provisions of the Connecticut statutes which expressly delegate control over public schools to local school boards, including the employment of teachers and staff, it does not appear that Lyddy and Marcoccia can prove any facts to support their Title VII claim against the City.

The Title VII claim against Cimmino must also be dismissed because individuals, including supervisors, are not liable under Title VII. *E.g., Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995); Martin v. Town of Westport 329 F. Supp. 2d 318, 325 (D. Conn. 2004).* Rather, as noted, liability under Title VII is limited to employers.

Because the allegations in the complaint are not sufficient to state a claim for relief under Title VII that is plausible on its face as to the City and Cimmino, and because it appears beyond doubt that they can prove no set of facts in support of their Title VII claim against either of these defendants, count one of the complaint against them is dismissed with prejudice. [3]

> 3 Lyddy and Marcoccia assert in their opposition papers that the first [*10] claim, even though it only alleges that the City deprived them of their rights "as provided by Title VII of the Civil Rights Act of 1964, § 710, et seq. as amended *42 U.S.C. § 2003, et seq[,]*" somehow also states a "common law tort" claim against the City, but they do not identify the nature of this "common law tort," nor do they allege any acts or conduct by the City to support any tort claim. Although the court must, on a motion to dismiss, liberally construe a complaint, *Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001),* this does not mean that it must construe a complaint to include a claim that is not pleaded. *Augienello v. Coast-to-Coast Fin. Corp., 64 Fed. Appx. 820 (2d Cir. 2003).* In the absence of any factual allegations supporting such a tort claim and the grounds on which it rests, this supposed claim, assuming it is alleged, is also dismissed. *Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343 (2d Cir. 2006)* (dismissing a complaint for failing to give the defendant fair notice of what the claim is and the grounds on which it rests). However, if Lyddy and

Marcoccia wish to pursue such a tort claim they shall file an amended complaint within 30 days setting forth [*11] sufficient factual allegations to afford the defendants fair notice of the claim and the grounds on which it is based and is plausible on its face. *Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1960.*

## II. *Emotional Distress Claim Against Cimmino*

The second count of the complaint alleges that Cimmino conducted himself "for the negligent and/or joint purposes of inflicting emotional distress upon plaintiffs and divesting them of their right to have their grievances redressed." [4] Cimmino moves to dismiss this count on the grounds that the alleged conduct is not extreme and outrageous and that it did not occur in the context of the termination of employment.

> 4    This allegation as to Cimmino's purpose is irrelevant in determining whether there is a viable claim of emotional distress because the dispositive issue is whether "the employer's conduct, not the motive behind the conduct, is extreme or outrageous." *Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000)); Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 123 (D. Conn. 1998)* ("The employer's motive ... is not relevant to whether the act was outrageous; it is the act itself which must be outrageous.").

## A. *Intentional Infliction* [*12] *of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *E.g., Golnik v. Amato, 299 F. Supp. 2d 8, 14-15 (D. Conn. 2003).* In addition, to be actionable, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient." *Appleton v. Bd. of Educ., 254 Conn. 205, 210-11, 757 A.2d 1059 (2000).* It is for the court to determine in [*13] the first instance whether the alleged conduct of a defendant, as a matter of law, satisfies these requirements. *Id. at 210; Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 712, 746 A.2d 184 (2000).*

In the employment context, courts carefully review intentional infliction of emotional distress claims. *Grigorenko v. Pauls, 297 F. Supp. 2d 446, 448 (D. Conn. 2003)* ("Intentional infliction of emotional distress claims are often pleaded but rarely get very far under the *Appleton* standard."); *Golnik v. Amato, 299 F. Supp. 2d at 15 (citing cases).*

Lyddy and Marcoccia do not identify the specific conduct that forms the basis of this claim, but the court construes the claim to be based only on Cimmino's alleged conduct that was directed at them, [5] consisting of (1) flaunting a device used to heighten sexual arousal, (2) wearing a tie bearing a painting of a naked woman, (3) leaving a sexually oriented newspaper on Marcoccia's desk, (4) bragging about his visits to a nudist camp and showing pictures of himself at the camp, (5) boasting about his trips to "S&M" clubs and inviting Lyddy to accompany him to one, (6) frequently stating he could get rid of anyone he wanted, (7) filing a criminal complaint accusing [*14] Lyddy and Marcoccia of complicity in connection with financial irregularities in an after-school program even though the charges had been found to be without merit by the Board and Internal Affairs, and that this coincided with the death of Lyddy's husband.

> 5    The complaint additionally alleges that Cimmino (1) restrained a student with masking tape over his mouth and body, (2) put a kindergarten boy across his lap and massaged his buttocks, and (3) gave a staff member thong underpants. Because this conduct was directed at third persons and not at either Lyddy or Marcoccia, it falls within the ambit of bystander emotional distress, which allows recovery, within certain limitations, for emotional distress as a result of harm done to a third party. *Clohessy v. Bachelor, 237 Conn. 31, 49, 675 A.2d 852 (1996).* However, to maintain such a claim, the *Clohessy* court set forth four requirements: First, the

2007 U.S. Dist. LEXIS 66920, *14

plaintiff bystander must be closely related to the injury victim. Second, the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury. Third, the injury to the victim must be substantial, resulting in either death or serious physical [*15] injury. Finally, the plaintiff bystander must have sustained a serious emotional injury--that is, "a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstance." *Id. at 52-54*. Lyddy and Marcoccia do not make any of these allegations. Thus, the conduct that was directed at third parties and not directly at them cannot be considered in assessing Cimmino's conduct for the purpose of the claim for intentional infliction of emotional distress.

Moreover, in light of the fact that the emotional distress claim is only alleged as to Cimmino, the conduct of other Board members and the unidentified police detective, who allegedly called Lyddy at home on the day of her husband's funeral to tell her there was a warrant for her arrest and called Marcoccia and warned her that if she retained a lawyer a warrant for her arrest would be issued within 48 hours, is also not relevant.

The court does not, however, need to decide whether this alleged conduct is sufficiently extreme and outrageous because the claim is otherwise deficient for failing to allege the other essential elements of an intentional infliction of emotional distress [*16] claim, i.e., that Cimmino intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct and that his conduct was the cause of the alleged emotional distress. E.g., *Golnik v. Amato, 299 F. Supp. 2d at 14-15*. Accordingly, because the factual allegations are not sufficient to state such a claim that is plausible on its face, it is dismissed with leave to replead.

B. *Negligent Infliction of Emotional Distress*

A cause of action for negligent infliction of emotional distress is limited to conduct arising out of the termination of employment. *Perodeau v. City of Hartford, 259 Conn. 729, 762-63, 792 A.2d 752 (2002)* ("[A]n individual municipal employee may not be found

liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment."). Cimmino's alleged conduct did not occur in the termination of employment. Indeed, both Lyddy and Marcoccia are still employed by the Board. Thus, this claim is dismissed with prejudice.

III. *Due Process Violation*

In the third count, Lyddy and Marcoccia allege that the City [6] "has [*17] attempted to abridge [their] due process rights by allowing defendant Cimmino's extortion attempts to proceed, by conducting a criminal investigation of them and threatening prosecution." The City maintains that these allegations are insufficient to allege a civil rights claim. The court agrees.

> 6    The third count is only brought against the City. It does not name the Board in apparent recognition of the fact that a plaintiff may assert a claim under *§ 1983* simultaneously with a Title VII claim only if the two claims are sufficiently distinguishable. *See Carrero v. New York City Hous. Auth., 890 F.2d 569, 576 (2d Cir. 1989)*. Indeed, "although Title VII supplements and overlaps *§ 1983*, it remains an exclusive remedy when a state or local employer violates only Title VII." *Moche v. City Univ. of N.Y., 781 F. Supp. 160, 168 (E.D.N.Y. 1992)* (quoting *Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1576 (5th Cir. 1989))*.

This claim is deficient in a number of ways. First, there is no direct cause of action under the *Fourteenth Amendment*. E.g., *Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 732 n.3 (7th Cir. 1994)* (holding that there is no direct cause of action under the *Fourteenth Amendment* [*18] and that Congress provided a means to vindicate these rights in *42 U.S.C. § 1983*); *Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir. 1979)* (same). However, in light of the court's obligation to construe complaints liberally, even those filed by attorneys, the court construes it as alleging a violation of *§ 1983*. *See e.g., Leonard Partnership v. Chenango, 779 F. Supp. 223 (N.D.N.Y. 1991)*.

Second, there can be no recovery under *§ 1983* for an attempted constitutional violation; only a claim of actual deprivation is cognizable under the statute. *Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995)*; *Mozzochi v.*

*Borden, 959 F.2d 1174, 1180 (2d Cir. 1992); Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990); Dooley v. Reiss, 736 F.2d 1392, 1394-95 (9th Cir. 1984); Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980); Ashford v. Skiles, 837 F. Supp. 108, 115 (E.D. Pa. 1993); Defeo v. Sill, 810 F. Supp. 648, 658 (E.D. Pa. 1993).* "[T]he mere attempt to deprive a person of his [constitutional] rights is not, under usual circumstances, actionable under *section 1983.*" *Andree v. Ashland County, 818 F.2d 1306, 1311 (7th Cir. 1987).*

Third, even construing this count as asserting a *§ 1983* [*19] claim does not save it from dismissal because it contains only broad and conclusory statements and not any specific allegations of fact which indicate the deprivation of a constitutional right. *Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987); Martinez v. Brevard County Parks & Rec., No. 6:06-cv-116-Orl-18DAB, 2006 U.S. Dist. LEXIS 16303, 2006 WL 4694730 (M.D. Fla. Apr. 05, 2006).* It also does not identify the protected liberty interest or property interest that was allegedly deprived and does not state whether the alleged due process violation is substantive or procedural. *See Hennessy v. City of Long Beach, 258 F. Supp. 2d 200, 206 (E.D.N.Y. 2003); Huff v. West Haven Bd. of Ed., 10 F. Supp. 2d 117, 121-22 & n.11 (D. Conn. 1998).*

Fourth, even if a *§ 1983* violation had been properly pleaded, the claim would be deficient because there is no allegation of any policy or custom of the City that caused the asserted constitutional deprivation under the guidelines established by the Supreme Court. *See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1976)* (holding that a municipality may be found liable under *§ 1983* only where the municipality itself causes the constitutional violation at issue); [*20] *see also e.g., Jenkins v. City of New York, 478 F.3d 76 (2d Cir. 2007); Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999).*

For all of these reasons, the third count is defective on its face and is dismissed with prejudice.

IV. *Fourth Count*

The fourth count of the complaint states that "plaintiffs pray that defendants be prohibited from continuing their harassment of plaintiffs as described above and specifically that they be prohibited from their attempts to engage in any activity related to the criminal prosecution of plaintiffs until the resolution of this case." The defendants assert that this claim is legally deficient. The court agrees.

In so far as this count purports to set forth a claim for relief, it is deficient because a claim for relief must contain a recitation of operative facts that give rise to an enforceable right. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187 (2d Cir. 1943).* To properly allege a claim for relief, a plaintiff must provide a short and plain statement showing that the pleader is entitled to relief so that the defendant is given fair notice of what the claim is and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* [*21] The fourth count does not contain a statement of the claim showing that Lyddy and Marcoccia are entitled to relief or the grounds on which the claim rests.

Rather than stating a claim for relief, the fourth count appears to set forth a prayer for temporary injunctive relief. As such, as a procedural matter, it is not properly asserted as a separate count of the complaint. *See Fed. R. Civ. P. 10(b).* As a substantive matter, such relief can not be granted because under *Rule 65(d),* an injunction must be more specific than a simple command that the defendants obey the law. *Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41 (2d Cir. 1996)* (holding it improper to issue an injunction barring a defendant from making threats of spurious lawsuits); *Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 748 (2d Cir. 1994)* (noting that an injunction cannot be broadly worded to generally prohibit unlawful activity); *Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir. 1996)* (noting that appellate courts will not countenance injunctions that merely require someone to obey the law); *Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994)* ("[I]njunctions, which carry possible contempt penalties for [*22] their violation must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.").

Indeed, to the extent Lyddy and Marcoccia seek to enjoin or impose unwarranted burdens on the City's ability to prosecute criminal conduct, such relief would only be appropriate in exceptional circumstances, if at all. *See Wooley v. Maynard, 430 U.S. 705, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977)* (noting that as a general rule, a court will not enjoin the enforcement of a criminal statute, even if unconstitutional, because doing so would

Case 1:07-cv-08526-WHP    Document 13-3    Filed 01/04/2008    Page 18 of 23

Page 7
2007 U.S. Dist. LEXIS 66920, *22

seriously impair the state's interest in enforcing its criminal laws and implicate the concerns for federalism, and that to justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights). This is not such an exceptional case.

Accordingly, the fourth count, in so far as it is intended to be a claim for relief, is dismissed with prejudice.

## V. *Motion to Strike*

The City, the Board, and Cimmino all move to strike the following allegations of the complaint: (1) the language in paragraph 12 which characterizes Cimmino's conduct as "sexual antics ... reminiscent [*23] of the boom-boom room" and mentions an alleged instance where Cimmino restrained a boy with masking tape and another where he put a kindergarten boy across his legs and massaged his buttocks; (2) the language in paragraph 13 that the school superintendent treated Lyddy and Marcoccia not as victims, but as perpetrators and their allegations as an embarrassment; (3) the language in paragraph 15 that Cimmino was "perhaps emboldened by his employer's failure to discipline him;" and (4) paragraphs 19, 22, and 27 in their entirety.

Although motions to strike are generally disfavored, they may be granted if the allegations have no bearing on the claims alleged, are likely to prejudice the movant, or have "criminal overtones." *G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002); see also Fed. R. Civ. P. 12(f)* (stating that redundant, immaterial, impertinent, or scandalous matter may be stricken from any pleading).

With regard to the allegations in paragraph 12 which characterize Cimmino's conduct as "sexual antics" reminiscent of a "boom-boom room," the court agrees that they improperly cast a derogatory and salacious light on the allegations and are irrelevant and [*24] immaterial and thus they are stricken. The court disagrees, however, that the allegations relating to Cimmino's conduct vis-a-vis students are irrelevant to the sexual harassment claim and thus these allegations are not stricken.

With regard to paragraphs 13 and 15, the defendants are correct that it is improper for Lyddy and Marcoccia to

allege their interpretation of the facts or to surmise as to the reasons for any alleged conduct, i.e., that the superintendent treated them as perpetrators not as victims (paragraph 13), and that Cimmino was "perhaps emboldened by his employer's failure to discipline him" (paragraph 15). These assertions are stricken.

With regard to paragraphs 19 and 27, the allegations relating to Lyddy's and Marcoccia's personal lives and health, i.e., (1) that the filing of the criminal complaint against Lyddy and Marcoccia coincided with the death of Lyddy's husband (paragraph 19) and (2) that the emotional distress Lyddy and Marcoccia suffered "has not been lessened by their personal health issues" and the details of those health issues (paragraph 27) are immaterial and irrelevant and are stricken. The remaining allegations in these paragraphs appear to be relevant [*25] and are not stricken.

Paragraph 22, which only contains statements about the prominence of the "Lyddy clan" in the Bridgeport area and the details of certain family members' accomplishments, is stricken in its entirety as irrelevant and immaterial.

## VII. *Motions to Disqualify Counsel For the City*

Lyddy and Marcoccia move pursuant to *rules 1.7*, [7] *1.8(b)*, and *1.9(2)* [8] of the Connecticut Rules of Professional Conduct to disqualify counsel from jointly and simultaneously representing both the City and the Board. They assert that counsel's joint representation of both defendants creates an insoluble conflict "stemming from the cross claims which independent counsel for each would plead against the other ... center[ing] around accusations that the other's action/inaction, misconduct/inattention, hiring policies/mismanagement/lack of supervision and so forth brought them in as defendants to this action."

> [7] *Rule 1.7* of the Rules of Professional Conduct sets forth the general rule on conflicts of interest in an attorney-client relationship. *Burton v. Mottolese, 267 Conn. 1, 835 A.2d 998 (2003). Subsection (a)* of the Rule provides: "A lawyer shall not represent a client if the representation of that client will [*26] be directly adverse to another client, unless: (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) Each client consents after consultation."

2007 U.S. Dist. LEXIS 66920, *26

8  *Rule 1.9* of the Rules of Professional Conduct governs disqualification of counsel for a conflict of interest relating to a former client. The rule states that: "A lawyer who has formerly represented a client in a matter shall not thereafter: (1) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (2) Use information relating to the representation to the disadvantage of the former client except as *Rule 1.6* would permit with respect to a client or when the information has become generally known."

Even if the motions to disqualify had merit, and even if Lyddy and Marcoccia had standing to assert such a conflict of interest, [9] the motions are denied as moot in light of the fact

9  Because of the substantial costs associated with disqualification of a party's counsel, and because disqualification is often misused [*27] by opposing parties as a procedural weapon and a technique of harassment, standing to seek disqualification is ordinarily limited to present or former clients who would be adversely affected by the continuing representation, whether or not they are parties to the present litigation. *Restatement (Third) of the Law Governing Lawyers § 6.* Thus, as a general rule, courts do not allow parties who are not directly affected to invoke the interests of a client with whom they are not in privity. *Id.; see also Premium Prods.*

*Sales Corp. v. Chipwich, Inc., 539 F. Supp. 427, 435 (S.D.N.Y. 1982)* ("[U]nless the integrity of the action currently before the court is threatened ..., the courts must refrain from imposing the burdens of an attorney disqualification on a client and leave the matter to state or federal disciplinary proceedings."); *United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)* (citing authorities for the proposition that disqualification motions are "often interposed for tactical reasons" and produce unnecessary delay).

that the claims against the City are dismissed.

*CONCLUSION*

For the foregoing reasons, the motion of the City and the Board [*28] [doc. # 26] to dismiss is GRANTED. Cimmino's motion to dismiss [doc. # 28] is GRANTED. The motions to strike [docs. ## 26 and 30] are GRANTED in part and DENIED in part. Lyddy and Marcoccia shall file an amended complaint consistent with this ruling within 30 days. Lyddy's and Marcoccia's motions to disqualify counsel [docs. ## 52 and 53] are DENIED.

SO ORDERED this 11th day of September, 2007 at Bridgeport, Connecticut.

/s/ Alan H. Nevas

United States District Judge

**TAB D**

LEXSEE 64 FED. APPX. 820

**SUSAN AUGIENELLO, RICHARD J. DORAN, PHILIP EINHORN, CRAIG NAZZARO, EILEEN PAPP, and VINCENT AMATO, Plaintiffs-Appellants, v. COAST-TO-COAST FINANCIAL CORP., ALVIN DWORMAN, PENNY PRITZKER, NELSON STEPHENSON, MONTE KURS, KEVIN SEXTON, and NEIL HALLERAN, Defendants-Appellees, JOHN DOES 1-100, Defendants.**

No. 02-9043

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*64 Fed. Appx. 820; 2003 U.S. App. LEXIS 8770; 30 Employee Benefits Cas. (BNA) 2280*

**May 9, 2003, Decided**

**NOTICE:**      [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Related proceeding at *Augienello v. FDIC, 2004 U.S. Dist. LEXIS 4744 (S.D.N.Y., Mar. 25, 2004)*

**PRIOR HISTORY:**      Appeal from the United States District Court for the Southern District of New York (Robert W. Sweet, Judge).
*Augienello v. Coast-To-Coast Fin. Corp., 2002 U.S. Dist. LEXIS 14584 (S.D.N.Y., Aug. 7, 2002)*

**DISPOSITION:** Affirmed.

**COUNSEL:** APPEARING FOR APPELLANTS: Laura E. Longobardi, Pearl River, NY.

APPEARING FOR APPELLEES: David W. Haller, Covington & Burling, New York, NY.

**JUDGES:** PRESENT: HONORABLE Guido Calabresi, HONORABLE Fred I. Parker, * Circuit Judges.

*    The Honorable Robert D. Sack of the United States Court of Appeals for the Second Circuit was originally assigned as a member of the panel, but recused himself prior to oral argument and did

not participate in the appeal. The appeal is being decided by the remaining two members of the panel, who are in agreement. See 2d Cir. R. § 0.14(b); Murray v. Nat'l Broad. Co., 35 F.3d 45, 47 (2d Cir. 1994).

**OPINION**

[*821] **SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the decision of said district court be and it hereby is AFFIRMED.

Plaintiffs-appellants Susan Augienello, Philip Einhorn, Eileen Papp, Richard Doran, Vincent Amato, [**2] and Craig Nazzaro, former middle-management employees at the Mortgage Division of Superior Bank FSB ("Superior"), appeal the district court's August 14, 2002 judgment granting the motion to dismiss of defendants-appellees Coast-to-Coast Financial Corp. ("CCFC"), Superior's parent corporation, and Alvin Dworman, Penny Pritzker, Nelson Stephenson, Monte Kurs, Kevin Sexton, and Neil Halleran, all of whom were CCFC stockholders and/or officers of CCFC, Superior, or other CCFC subsidiaries. The plaintiffs' complaint included three causes of action. First, the plaintiffs claim that the defendants were fiduciaries under an *Employee Retirement Income Security Act* ("ERISA") plan, and that the defendants breached their fiduciary duties to the

64 Fed. Appx. 820, *821; 2003 U.S. App. LEXIS 8770, **2;
30 Employee Benefits Cas. (BNA) 2280

plaintiffs. Second, the complaint alleges that CCFC, Dworman, and Pritzker breached employment contracts that plaintiffs entered into with Superior. Finally, plaintiffs claim that CCFC, Dworman, and Pritzker were unjustly enriched by taking money from the ERISA plan and by unjustly using the plaintiffs' labor.

The plaintiffs claims depend on their entitlement to certain benefits (severance pay and deferred compensation) promised in the employment contracts [**3] between the plaintiffs and Superior. However, the district court found that the plaintiffs were not entitled to these benefits because, according to the terms of the employment contracts, the contracts terminated automatically when the Federal Deposit Insurance Corporation ("FDIC") placed Superior into receivership. Although the contracts also provided that rights and obligations that were vested when the contract terminated would survive the termination, the district court concluded that none of the plaintiffs claimed rights were vested at the time the contract terminated. We agree, for substantially the same reasons as those given by the district court, that according to the terms of the contract the plaintiffs did not have any vested rights at the time the contracts terminated. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2001)* ("Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. . . . If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic [*822] evidence . . . ." (internal [**4] citations and punctuation omitted)).

On appeal, the plaintiffs have also argued that even if the defendants did not violate the express terms of the contracts, they violated the implied covenant of good faith and fair dealing. [1] The plaintiffs contend that the defendants "cannot be heard to argue that there was no breach of the Employment Agreements, asserting that those agreements terminated by operation of law and not in any manner that permitted the payment of continued compensation to [the plaintiffs] . . . [because the defendants] themselves were the ones who proximately caused the failure of Superior, and are the alter egos of Superior. Consequently, they cannot be allowed to take advantage of circumstances that they created in order to avoid liability." Appellants' Br. at 17-18; *see also* Reply Br. at 5 (citing *Lowell v. Twin Disc, Inc., 527 F.2d 767 (2d Cir. 1975)* ("It is a fundamental principle of law that

in every contract there exists an implied covenant of good faith and fair dealing. Furthermore, each contract contains an implicit understanding that neither party will intentionally do anything to prevent the other party from carrying out his part [**5] of the agreement.")).

> 1 Although the plaintiffs have not sued Superior, the counter-party to the employment contracts, they contend that the defendants here may properly be held accountable for Superior's obligations by piercing the corporate veil. *See Island Seafood Co., Inc. v. Golub Corp.,303 A.D.2d 892, 759 N.Y.S.2d 768, 2003 N.Y. App. Div. LEXIS 2468, 2003 WL1090189, at *1 (3d Dep't Mar. 13, 2003)*. However, in order for corporate veil piercing to be of any assistance, the plaintiffs must first establish a claim against Superior. Because we agree with the district court's conclusion that the plaintiffs did not have any vested rights under the employment contracts, the only remaining argument for a claim against Superior is for a breach of the implied covenant of good faith and fair dealing.

However, as the plaintiffs' counsel acknowledged at oral argument, the complaint does not include a claim for or allegation of a breach of the duty of good faith and fair dealing. Nonetheless, plaintiffs ask us to construe their complaint [**6] liberally to reach this issue. Although we recognize the principle that, on a motion to dismiss, the complaint should be construed liberally, *see Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)*, that principle is not enough to save the plaintiffs here. Nowhere in the complaint is there any mention of a duty of good faith and fair dealing, or allegation that the defendants breached such a duty. Thus, the plaintiffs are not asking for liberal construction of their complaint so much as amendment of the complaint to include a claim that they did not plead. Because the plaintiffs never sought leave in the district court to amend the complaint to add such a claim, we conclude that there was no error in the district court's decision to dismiss the plaintiffs' complaint for failure to state a claim.

We have considered all of the appellants' remaining arguments and find them to be without merit. For these reasons, the judgment of the district court is AFFIRMED. In light of this holding, we deny as moot CCFC's February 10, 2003 Motion for "Judicial Notice of Complaint Filed by Plaintiffs-Appellants in Related

64 Fed. Appx. 820, *822; 2003 U.S. App. LEXIS 8770, **6;
30 Employee Benefits Cas. (BNA) 2280

Case." In light of this holding, we deny as moot CCFC's
February 10, 2003 Motion [**7] for "Judicial Notice of
Complaint Filed by Plaintiffs-Appellants in Related

Case."